The causes of action alleged upon in this suit arose from the palpable negligence of Hosea Robinson, truck driver and employee of the defendant, Del Cryer, doing business as Cryer Drilling Company, but who, at the time of the accident involved herein, it is now admitted by all plaintiffs, was not on a mission for his employer, nor in any respect acting within the scope of his employment.
Prior to Robinson's employment Mr. Cryer approached him on the subject and being favorably impressed with his record as a truck driver, told him that he would submit the question of employment to his driller, P.E. Haynes, who then had an interest in the company, and if Haynes was likewise impressed he would close the contract of hiring. This was done the following day, and the company's three ton truck with keys was delivered by Haynes into Robinson's custody. It was understood between them that when the truck was not being used in furtherance of the company's business, it would be parked in front of and *Page 811 
close to the house in which Robinson lived on Highway No. 80, about 12 miles east of the City of Shreveport. This site was selected mainly because its proximity to the house would insure the vehicle against pilfering, The site was within the right of way of the highway, and permission to park the car thereon was obtained from a highway department employee.
Haynes severed his connection with the company on November 15, 1945, and from then on the company was owned and its business activities conducted exclusively by Cryer.
It is admitted that from the date of his employment to the time of the accident, hereinafter described, Robinson's custody of the truck was continuous and unbroken. When drilling operations were relatively close to his home he would, the morning of each working day, pick up Cryer's workmen, haul them to the scene of drilling and at close of the day drive them back to the highway where they caught transportation to Shreveport. This done, the truck would be parked where agreed upon.
At noon on Saturday, December 15, 1945, Cryer, then about to commence drilling a well three miles distant from Robinson's home, informed his employees that work for the day was over and that they were at liberty to go. Robinson, as was his uniform custom, drove the truck to his home. His wife was then absent, but returned about 2:30 p.m. The two then got into the truck and drove easterly to the home of one Hickman, a brother-in-law, a few miles distant, for the purpose of assisting him in killing and dressing a hog. After this was done it was discovered that the supply of salt on hand was inadequate to preserve the dismembered animal. Robinson and Hickman then got into the truck, the former driving, and went to Minden, a distance of eight miles, to acquire the needed salt. This done, they started back to Hickman's home. It was then dark, or nearly so, and the lights on moving automobiles were displayed. On the way, to avoid colliding with an on-coming motor vehicle, Robinson pulled the truck too far to its right and it skidded into the shallow drain ditch adjacent to the highway's north side. The ground was soft and the truck, by its own power, would not come out of the ditch. Robinson and Hickman then decided to pull it upon the highway by the use of a steel cable and a winch attached to the truck. The cable was stretched across the highway and tied to a large light pole on the south side thereof. When power was applied the cable rose taut probably two feet above the road's surface and while in this position a truck owned by plaintiffs, Stanley and Smith, driven by Stanley's employee, L.P. Nelson, accompanied by his wife, Aline Nelson, ran into it. The cable broke and Nelson lost control of the truck. It ran to the right across the ditch, into a fence belonging to plaintiff, Stewart, and finally stopped in his pasture. Nelson fell from the truck semi-conscious and painfully injured after it entered Stewart's property. His wife was badly shaken up and sustained serious injuries.
The plaintiffs in the case are Nelson and his wife who seek to recover damages for the physical injuries they received in and from the accident, and for physicians' and hospital bills incurred in treating them, James E. Stanley and Edgar B. Smith, owners of the truck driven by Nelson, who sued for damages to it, and Edmund L. Stewart, who sued to recover damages done to his fence.
Del Cryer and the carrier of insurance on the truck, Employers Casualty Company, were impleaded as defendants.
L.P. Nelson's employer and his insurer, Associated Indemnity Corporation, conceded liability to him for workmen's compensation, and he was paid by the insurer on that account $20 per week for the time it admitted he was totally disabled to work. The insurer also paid hospital and medical expenses incurred in treating him, amounting to $176.50. It intervened and prayed that in event Nelson should be awarded judgment herein, that it recover from him the amount above stated, and reasonable attorney's fee.
The insurer is sought to be held liable to plaintiffs on the theory that at the time of the accident Hosea Robinson, Cryer's *Page 812 
employee, was using the, truck with Cryer's permission within the meaning of the following clause of the insurance policy, to-wit:
"Definition of 'Insured'
"The unqualified word 'insured' wherever used in Coverages A and B and in other parts of this policy, when applicable to such Coverages, includes the Named Insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the Named Insured. * * *"
The named insured, of course, is Cryer. Under coverages A and B of the policy the insurer obligated itself to pay on behalf of the insured all sums which he shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury, including death, and damages to or destruction of property "caused by accident and arising out of the ownership, maintenance or use of the automobile" (truck).
The lower court held for plaintiffs and each was awarded judgment. There was also judgment in favor of the intervenor as prayed for by it. The defendant, insurance company, appealed suspensively. Answering the appeal, L.P. Nelson prays for increase in judgment in his favor from $3,000 to $15,973 and his wife asks for increase from $2,000 to $6,500. Appellant insists that both judgments are excessive and should be substantially reduced should it be finally held that there is liability to any extent on its part.
The facts of the case, in the main, are not in serious dispute. It is proven that Robinson, on several occasions, drove the truck to Minden, nearly 20 miles east of his home, and to Bossier City, 12 miles west of it, to purchase groceries It is, however, also proven that neither Haynes nor Cryer knew that he was using the truck for said purpose or for any purpose other than that contemplated by his employment. It is also established that Robinson at no time sought permission to use the truck for his personal business or pleasure, and that neither Haynes nor Cryer expressly forbade him to so use it.
It is contended on behalf of plaintiffs that the proven and undisputed facts clearly warranted Robinson in concluding that he had permission to use the truck on errands of personal business, and that such facts justify a conclusion that tacitly and impliedly Cryer consented that he so use it. With the foregoing as a premise, plaintiffs further contend that Robinson, at the time of the accident, was an insured under the "omnibus clause" hereinabove quoted. Amplifying, in brief, they argue, viz.: "* * * The clothing of Robinson with custody and control of the truck and the absence of any instructions to him, as to the use of the truck, constituted not only initial permission to use the truck, but constituted continuing and constant permission to use it."
Appellant, of course, contends adversely to the legal conclusions advanced by appellees. On its behalf it is argued that the initial permission to Robinson to use the truck, for the day of the accident, ended when he parked it at his home, in keeping with the understanding; that this condition subsisted until the truck was again used to further the employer's business; that when he again used it on that date in a private mission of his own, he was not protected as an insured under any coverage of the policy; that such use was not contemplated by the employment nor by the terms of the policy, and was not with the permission or consent of Cryer.
Diligent counsel have provided elaborate briefs that cover all phases of the case. The jurisprudence of this state, dealing with the sole controversial issue, that of coverage, and of other jurisdictions, is cited and discussed.
The first case to reach the Supreme Court of this state that involved the issue of coverage under a provision in a policy of the character as that now before us, is Parks v. Hall et al.,189 La. 849, 181 So. 191. The facts of that case are in one material respect different from those of the present case. In that case the owner of *Page 813 
the car entrusted it to his employee with instructions to have it washed and greased and thereafter to return it to the owner's residence. The servant first drove the car to the wash rack but found it in use. He then, without his employer's knowledge, drove the car some distance, picked up some friends, and while driving the car about the city, experienced an accident in which Hall, one of the guests, was injured, and out of which the suit arose. The court in deciding the case followed the minority rule of this country. It was held that the initial permission of the owner to the servant to drive the car was all that was necesary to constitute the servant an "insured" under the omnibus clause, and the fact that when the accident occurred the car was being used for a purpose not contemplated by the employment and without the employer's knowledge and consent, was not controlling of the question of the insurer's liability under said clause.
Plaintiffs rely upon Parks v. Hall, supra; Haeuser v. Ætna Casualty and Surety Company et al., La. App., 187 So. 684, and Farnet v. DeCuers et al., La. App., 195 So. 797, the two latter cases having been decided by the Orleans Court of Appeal.
In each of these two latter cases the omnibus clause involved was virtually the same in language as that in the case at bar, and in each the court held that the driver at fault was an insured under said clause. In both cases the court discussed at length the pertinent jurisprudence not only of this state but of other states. In the. Haeuser case the chauffeur of one Kerner was instructed to return the car to the owner's garage. He did not do so immediately, but departed from the scope of the permission given by his employer by conveying some friends to their home and while thus engaged, the accident happened. The facts of this case are squarely on all-fours with those of the Parks v. Hall case and under the decision in that case the insurer in the Haeuser case was properly held liable. The omnibus clauses in these two cases, and in the present one, differ in one respect from that in the Parks v. Hall case, in that in the policies involved in the three later cases the word "actual" immediately precedes the word "use", whereas the word "actual" does not appear in that connection in the policy in the Parks v. Hall case.
Judge Westerfeld, the organ of the court in the Haeuser case, on rehearing, cogently discussed the attempted change in the meaning of the omnibus clause by employment of the word "actual", as above stated, and held that no real change in the clause's legal meaning and effect had been wrought thereby. We concur in this ruling. A writ of review was denied by the Supreme Court although one judge dissented when the case was decided on rehearing.
The facts of the Farnet case, supra [195 So. 801], substantially are like those of the Haeuser case. We quote the following factual findings and conclusions of the court in the Farnet case, to-wit:
"We think it well to review briefly certain facts bearing upon the exact purpose for which the car was being used at the time of the accident. The record shows that, though DeCuers had been instructed not to use the car except on business of the Board of Health, he had, as a matter of fact, customarily used it for his own purposes, and the record shows, also, that he was instructed to store the car at night in a public garage selected by the Board of Health. During the afternoon of the day on which the accident occurred, having finished his work for the day, he parked the car in front of his home at about 1:30 p.m. On that evening he attended a social affair at the residence of a neighbor living next door, leaving his car in front of his own home, where he had parked it in the afternoon. While at this social affair, he met Farnet, and, as Farnet was leaving, DeCuers suggested that he would be glad to drive him home. It was while he was driving Farnet home that the accident occurred.
"Even in the light of the doctrine announced in the Haeuser case, we doubt whether we would conclude that the 'omnibus clause' should cover under such circumstances were it not for the additional fact that DeCuers testified that, in addition to taking Farnet to his home, he intended *Page 814 
afterwards to park the car in the garage where it was customarily stored over night.
* * * * * * *
"Even the doctrine of the Haeuser case would not extend so far as to require a holding that an employee, after putting away the employer's automobile, could again take it out entirely for a purpose of his own and yet obtain the coverage and protection of such an 'omnibus clause'. We think that it is necessary that he must, at the time of the occurrence, have actually taken the car for some purpose contemplated by the owner and that it is only when he steps aside from the accomplishment of this purpose that the 'omnibus clause' affords protection. But we think that, under the circumstances here, since it was his ultimate purpose to put the car in the garage, when he took it from the curb where he had left it in front of his home he did so 'with the permission of the named insured' since he intended ultimately to put it where it should be — that is, in the designated garage.
* * * * * * *
"We conclude, on this point that, since DeCuers intended to return the car to its garage after using it on the occasion in question, it should properly be said, under the doctrine of the Haeuser case, that the 'actual use' to which it was being devoted at the time was 'with the permission of the named insured'; that, consequently, DeCuers was within the protection of the policy, and that consequently, also, the plaintiff, Farnet, because of the provisions of the policy and because of the provisions of Act 55 of 1930, may obtain judgment directly against the said insurer."
The Supreme Court denied application for writ of review in the case, saying that according to the facts found by the Court of Appeal, its judgment was correct.
There is a fundamental difference between the facts of the three cited cases, in each of which the insurer was held liable under the omnibus clause, and the facts of the present case, and it is this: in neither of the three cited cases had the employee delivered the car to the owner's garage, as directed, before involving it in an accident, whereas in the present case, the truck had been delivered to its usual parking place, after working hours, and some eight hours thereafter was involved in an accident when being used solely for the employee's pleasure. We think this difference in facts pivotal.
[1] It is not contended, nor could it well be, that when the employer does not specifically forbid his servant to use for his own business and/or pleasure the motor vehicle confided to his custody, for use in the employer's business, that the employee is warranted in assuming that he may use such vehicle for his own business and/or pleasure. The contrary is true.
[2] In this case the truck was a very heavy, ponderous one, expensive to operate. It was used exclusively in connection with heavy drilling operations. This being true, it would require quite a stretch of the imagination to conclude that it was contemplated by any one concerned that it could be used by Robinson for pleasure or business purposes of his own.
It is of some significance that in the three above discussed cases the vehicle involved was a passenger car, not a truck.
It is a legal certainty that if Robinson had been required at the end of each day's work to put the truck in a designated garage of Cryer's, and he had done so the day of the accident, and thereafter, without the knowledge or consent of Cryer, removed it from the garage and had an accident, the coverage provision of the policy would not have protected him. James et al. v. J. S. Williams Son, Inc., 177 La. 1033, 150 So. 9; Stephenson v. List Laundry Dry Cleaners, Inc., et al.,186 La. 11, 171 So. 556; Wilson v. Farnsworth et al., La. App.,4 So.2d 247; Clemons et al. v. Metropolitan Casualty Insurance Company et al., La. App., 18 So.2d 228.
We are unable to perceive, in principle, any material difference between the hypothetical case above stated and the one before us. In that case the truck would have been left between working days, for safe keeping, at the place designated by the owner and it would have been taken out and used without the owner's consent or *Page 815 
knowledge; and that is what happened in the present case.
Because Cryer did not discharge Robinson immediately after the accident, nor have him arrested on a charge of driving the truck without his permission, we think should not be construed to mean that he had tacitly or otherwise authorized Robinson to use the truck on missions purely his own. Various good reasons, business or otherwise, could have motivated him in refraining from taking either action against Robinson.
Therefore, for the reasons herein given, the judgments in favor of the plaintiffs, appealed from, are annulled, avoided and reversed; their suits are dismissed and their demands are rejected at their cost.
It is further ordered, adjudged and decreed that the petition of intervention filed herein by Associated Indemnity Corporation be also dismissed and the judgment in its favor is also reversed, annulled and set aside at its cost.
It is further ordered, adjudged and decreed that the judgment of the lower court, rejecting plaintiffs' demands against defendant, Del Cryer, be and it is hereby affirmed.
KENNON, J., dissents, and gives written reasons.
KENNON, Judge, dissents, being of the opinion, under the facts disclosed by the majority opinion, that the insurer is liable under the omnibus clause as interpreted in the two cases discussed in the majority opinion, Haeuser v. Aetna Casualty 
Surety Co. et al., La. App., 187 So. 684 and Farnet v. DeCuers et al., La. App., 195 So. 797. The truck was never out of the driver Robinson's custody and control and the parking of the vehicle in front of his home during the time between completion of work and beginning of the personal errand did not, in my opinion, constitute a surrender of possession or control, so as to make the case distinguishable from the Haeuser and Farnet cases, in which the insurer was held liable under an omnibus clause virtually the same in language as that in the case at bar.