This is a suit for damages against the insurer of the owner of a truck involved in a collision in which plaintiff sustained injuries. From judgment in favor of plaintiff the defendant has appealed, and the appeal has been answered on behalf of plaintiff praying for an increase in the amount of damages awarded.
For the most part the pertinent facts involved are either uncontradicted or definitely established, and are as follows:
One A.K. Gillis, the named insured under a policy of liability insurance issued by the defendant, Indemnity Insurance Company of North America, the owner of a truck used in the nature of a bus, as hereinafter set forth, entered into a contract with the Louisiana Arkansas Railway Company under which he hired the truck to the railroad for the purpose of transporting labor from the Town of Coushatta in Red River Parish, Louisiana, to various points on the railroad right-of-way and return. After working hours, upon the return of the truck to Coushatta, it was parked in a vacant area of property of the railroad company which lay between the hotel and the depot. This arrangement had originally been followed as a matter of convenience to the driver of the truck who roomed at the hotel, and was continued without change by the succeeding driver, who is the individual involved in the incidents hereinafter related. At the time of the accident which gave rise to this action the driver of the truck was one C.D. Selby, an employee of both the L. A. Railroad Company and Gillis, the owner of the truck, being paid regular wages by the railroad company for the working day and additionally receiving pay from Gillis at the rate of $30 per month for his services performed in driving the truck to the points on the right-of-way, where work was in progress, and return. Selby worked directly under the supervision of one Bert Minchew, an employee of the railroad company. It is conclusively established that Selby had been positively instructed by both Gillis and Minchew that the use of the *Page 555 
truck was to be confined exclusively to the one purpose of transporting laborers to and from their work on the railroad, and there is no evidence that there had been any previous disregard of these instructions nor any other use of the truck except for occasional trips to a local filling station for the replenishment of its fuel.
It was the custom of Selby, the driver, on returning to Coushatta sometime around 5:00 o'clock in the afternoon to park the truck in the space described, where it was left overnight. The truck was not locked, the key to the ignition switch having been lost, and it was necessary to manipulate the ignition wires in lieu of using a key.
On the day of the accident, September 4, 1943, the driver, Selby, brought the truck to Coushatta and parked the same in the accustomed place at or about 5:00 o'clock in the afternoon. According to the undisputed testimony of one of plaintiff's witnesses, a negro by the name of Ben Washington, who was an assistant foreman on the railroad work, Selby and another white man invited the witness and two other negroes to drive up to Loggy Bayou, which is about seventeen miles from Coushatta, that night. The party was made up, and embarked on its expedition in the truck about 7:30 or 8:00 o'clock that night, the point of departure being from the truck's described parking space. The witness, Washington, further testified that he asked Selby if he had permission to use the truck for the purpose of this pleasure jaunt and Selby replied in the negative, but insisted that he intended to bring the truck right back and that they would be gone only for a little while.
The attraction at Loggy Bayou appears to have been a saloon which was patronized by all members of the party, not only to the extent of a few assorted drinks of whiskey and beer but also by the purchase of packaged goods of these substances.
On the return trip on Highway 71, at a point some three or four miles from Coushatta, the truck, recklessly driven at a high rate of speed by Selby, who was allegedly in an intoxicated condition, crashed into a passenger automobile parked on the side of the highway while its driver, plaintiff's son-in-law, was attempting to repair some motor trouble, assisted by plaintiff, who was holding a flashlight. As a result of the accident plaintiff sustained injury.
At the instance of some of the other members of the party, Selby was prevailed upon to bring the truck to a stop at a point which was considerable distance down the highway, and all packaged evidences of intoxicants were disposed of by being thrown into the bushes at the side of the road.
Within a few days after the accident Selby was discharged by the railroad company and his subsequent whereabouts apparently became a matter of speculation and conjecture since there is no evidence thereto in the record.
The negligence of Selby, the driver of the truck, is conclusively established, and, likewise, it is certain that at the time of the accident Selby was acting outside of and beyond the course, scope and purpose of his employment. It follows that any questions concerning negligence and the applicability of the doctrine of respondeat superior have passed out of the case.
The sole issue in the case before us, therefore, involves an interpretation of the familiar omnibus clause embodied in the policy of insurance issued by defendant under which Gillis, the owner of the truck, was the named insured, and a determination of the application of this clause under the facts in the case before us.
In his written opinion the judge of the district court based his judgment upon the holdings in Parks v. Hall, 189 La. 849,181 So. 191, and United States Fidelity Guaranty Co. v. DeCuers, D.C., 33 F. Supp. 710, 711, distinguishing the case of Wilson v. Farnsworth, La. App., 4 So.2d 247, under the facts.
Quite recently this court has decided the identical question involved here, in Stanley et al. v. Cryer Drilling Co. et al., Associated Indemnity Corporation, Intervenor, 29 So.2d 810, in which matter writs of certiorari were granted by the Honorable The Supreme Court of the State of Louisiana, on April 21, 1947, and before which court the case is now pending. *Page 556 
In his opinion in the above case Judge Taliaferro, speaking for the majority of this court, fully and ably discussed the Parks, DeCuers and Farnsworth cases, supra, as well as Haeuser v. Aetna Casualty Surety Co. et al., La. App., 187 So. 684. The majority of this court reached the conclusion that the driver of the truck in the Stanley case was operating the vehicle without that nature and character of permission comprehended in the omnibus clause of the insurance policy.
While we have above referred to the Stanley case as comprehending the identical issue involved in this matter, we feel that the facts in the instant case are far stronger than in the Stanley case. In the first place, it was not shown that the driver of the Cryer truck had ever been specifically and positively instructed that the use of the vehicle was to be restricted to business purposes; second, it was established that the driver of the Cryer truck was accustomed to use the truck in connection with personal matters; third, the location of the parking space was immediately outside the place of residence of the driver, and, fourth, the period of time intervening between the driver's return of the truck and his resumption of its use was comparatively insignicant in duration.
In the instant case, as opposed to the above facts, it has been conclusively established:
(1) That Selby, the driver of the truck, had been specifically and definitely prohibited from any use of the truck aside from the particular and limited purpose of hauling railroad laborers from Coushatta to the points of labor and return, and, by the testimony of plaintiff's own witness, Selby was completely aware of these instructions and deliberately and intentionally violated them.
(3) The truck was invariably parked at or near the hour of 5:00 o'clock, immediately after its return to Coushatta, in the place located on railroad property, and established by custom and usage.
(4) There was a complete, definite and considerable interval of time between the return of the truck on the day of the accident and the resumption of its use for an absolutely unauthorized purpose.
[1] We feel that the reasons advanced by this court in the Stanley case are not only controlling but, because of the above recited facts, are rendered more potent and conclusive in their application to the case at bar.
It is earnestly contended by distinguished counsel for plaintiff-appellee that Selby, engaged to drive the truck, had absolute possession of the vehicle for the reasons that he was responsible for its operation, for keeping it in good mechanical condition, for refueling, further, because there was no designated place of parking or storage and the place used was a matter of convenience to the driver, and, finally, that if there had been a key to the truck it would at all times have been in the possession of the driver, Selby.
The reasons advanced, as above enunciated, unquestionably are conclusive as to Selby's possession, custody and control of the truck, but we do not find that any of them are valid arguments in support of the proposition that the use of the truck by Selby at the time of the accident was within the "permission" of the insured under the provisions of the omnibus clause of the policy contract.
Counsel also attempts to combat the defense that Selby violated instructions, a fact which is established beyond any question, by arguing that because Selby would have been within the authority of his instructions by driving the truck at any hour of the night to a filling station for refueling, or to a point for purposes of procuring parts or repairs, he was also within his authority in employing the truck in a purely personal venture. Such a conclusion does not logically follow from the premises advanced.
In effect the burden of plaintiff's contentions is that the original permission to drive and possess the truck embraced the use to which the vehicle was being put at the time of the accident. We cannot so hold.
The leading Louisiana cases involving the point of law at issue herein, which are *Page 557 
relied upon by plaintiff, and which were emphasized by our esteemed brother of the district court in his opinion assigning reasons for judgment, are Parks v. Hall, 189 La. 849,181 So. 191; Haeuser v. Aetna Casualty Insurance Co., La. App., 187 So. 684; and Farnet v. DeCuers, La. App., 195 So. 797, 802.
We do not find the cited cases to be controlling under the facts of the instant case. Justice Fournet, who was the organ of the Supreme Court in the Parks v. Hall case, ably and plainly pointed out that the decision of the court on that matter turned upon the fact that the permission of the assured to the employee to use the car in the first instance was to be construed as permission of the assured within the meaning of the provisions of the omnibus clause. This principle, as enunciated in the opinion referred to, is an expression of what is called the "first instance rule," which is followed in a number of jurisdictions, including Louisiana.
The Haeuser case, supra, primarily concerned the interpretation of the words "actual use" as embraced in the omnibus clause, and the relationship of the character of use with the first instance permission of the insured.
The same issue of law was considered and applications made of the same principle in the Farnet case. But, we particularly wish to call attention to the distinction expressly made by Judge Janvier, the distinguished author of the opinion, who had dissented from the majority opinion in the Haeuser case, as follows:
"Even the doctrine of the Haeuser case would not extend so far as to require a holding that an employee, after putting away the employer's automobile, could again take it out entirely for a purpose of his own and yet obtain the coverage and protection of such an 'omnibus clause'. We think that it is necessary that he must, at the time of the occurrence, have actually taken the car for some purpose contemlated by the owner and that it is only when he steps aside from the accomplishment of this purpose that the 'omnibus clause' affords protection."
The facts in the case before us are so clearly distinguishable from the facts of the Parks, Haeuser and Farnet cases as to place this case in an entirely different category. The facts before us are analogous to those in Wilson v. Farnsworth, La. App., 4 So.2d 247. The Opinion in that case recognized the point that the controlling factor was whether or not the initial use of the car was with the permission of the owner, the named assured, and held that under the facts of the case it was not, since the use was in defiance of a well known rule or regulation of the employer.
In the case at bar the driver took possession of the truck in violation of definite and unequivocal instructions, whichviolation he acknowledged and admitted, a far more flagrant breach than the violation of printed regulations.
It was further pointed out in the opinion in the Wilson case that the status of the employee at the time of the use of his employer's truck without permission was that of an interloper and constituted an intrusion and conversion of his employer's property.
In the course of his opinion in the case of Stanley v. Cryer, supra [29 So.2d 814], Judge Taliaferro made the following observation:
"It is a legal certainty that if Robinson had been required at the end of each day's work to put the truck in a designated garage of Cryer's, and he had done so the day of the accident, and thereafter, without the knowledge or consent of Cryer, removed it from the garage and had an accident, the coverage provision of the policy would not have protected him. James et al. v. J. S. Williams Son, Inc., 177 La. 1033, 150 So. 9; Stephenson v. List Laundry Dry Cleaners, Inc., et al.,186 La. 11, 171 So. 556; Wilson v. Farnsworth et al., La. App.,4 So.2d 247; Clemons et al. v. Metropolitan Casualty Insurance Co. et al., La. App., 18 So.2d 228."
Here, as in the Stanley case, there was no designated garage for the parking of the vehicle, but there was a specific place recognized and established by custom. And, in each of these cases there was a definitely *Page 558 
established reason for the selection of the particular place for parking the vehicle after the termination of each daily period of its authorized use.
While we are convinced that the Louisiana cases above cited are more than sufficient for the purpose of substantiating our conclusions, we cannot refrain from referring to authorities from other jurisdictions which have impressed us, in the course of our examination of this question, by reason of the logical development and application of the principle to which we here adhere. Byrne v. Continental Casualty Co., 301 Ill. App. 447,23 N.E.2d 175; Jordan v. Shelby Mutual Plate Glass Casualty Co., 4 Cir., 142 F.2d 52; Houlihan v. Selengut et al., 175 Misc. 854, 25 N.Y.S.2d 371; Hodges v. Ocean Accident 
Guarantee Corporation, 66 Ga. App. 431, 18 S.E.2d 28; and Western Casualty Surety Co. v. Strozier, 67 Ga. App. 41,19 S.E.2d 433.
In the Hodges case, supra, the Court cited the Haeuser case as an example of the first instance doctrine, but refused to apply that principle in view of the fact that the use of the automobile in the case before the court was in direct violation of the employer's instruction, and held, therefore, that there was no first instance permission.
[2] An analysis of the jurisprudence of Louisiana, and the other states to which reference has been made, convinces us that the established rule fixing liability of the insurer under the "permission" provision of the omnibus clause must rest upon a finding of facts which are applicable:
(1) In those cases in which permission is given or implied for the beginning of the use of a vehicle by an employee. (This covers all cases of so-called temporary deviation from a specific mission, as exemplified under the facts in Parks v. Hall.)
(2) In those cases in which a vehicle has not been returned to a specific or designated place of storage, although the use of the vehicle for an authorized purpose has been concluded. (This covers facts such as were developed in the Haeuser and DeCuers cases.)
But equally well established is the rule that the resumption of the use of a vehicle for an unauthorized or forbidden purpose involving its taking out or away from a designated or established place of parking after working hours, cannot be interpreted as falling under the protection of the omnibus clause.
To hold that the taking of a vehicle for personal use, after termination of a period of authorized use and a return of the vehicle to an established parking place, subjects the insurer to liability under the omnibus clause, would have the effect of condoning the conversion of an employer's property by his employee. Indeed, under the facts developed in this case an extension of the coverage of the omnibus clause would establish a principle of law which would permit recovery against an insurer under any conceivable set of facts involving a taking and using of an employer's vehicle by the employee. Such a principle would be so unjust as to be unthinkable.
For the reasons assigned, the judgment appealed from is reversed and set aside, and there is now judgment in favor of defendant rejecting plaintiff's demands, at appellant's cost.