FOURNET, Justice.
 

 This suit was instituted by five plaintiffs against Del Cryer, doing business as the Cryer Drilling Company, and his insurer, the Employers Casualty Company, to recover varying sums for the damages incurred by each as the result of an accident that occurred on U. S. Highway No. 80 between Minden and Shreveport around 7 p. m. on the night of Saturday, December 15, 1945, when the
 
 I1/2
 
 ton Ford truck being operated by the plaintiff L. P. Nelson ran into a cable that Hosea Robinson had stretched across the highway in an attempt to pull back on the road the
 
 2Y2
 
 ton Diamond T truck owned by his employer, Del Cryer, and allegedly being driven by him
 
 *983
 
 with his employer’s permission at the time it was forced from the road into a ditch by a passing motorist. Nelson and his wife, Aline, who was riding with him at the time of the accident, are seeking to recover the sums of $15,973 and $6,500 respectively for personal injuries; Edgar B. Smith and James A. Stanley the sum of $354.86, for damages to the truck jointly owned by them; and Edmund L. Stewart the sum of $25 for damages to his fence at the scene of the accident'.
 

 The defendants filed a joint answer denying liability, specially averring that the insurance policy was issued for the exclusive protection and benefit of the owner of the truck and such persons as were actually using it with the assured’s permission and that at the time of the accident Robinson was not on any mission of or for the assured but on one of his own, without the knowledge or consent of the assured.
 

 The Associated Indemnity Corporation, compensation insurer of Nelson’s employer, intervened to recover the amounts paid Nelson as compensation, as well as his hospital and medical bills, plus attorney fees.
 

 There was judgment in the district court in favor of L.P. Nelson in the sum of $3,-179.50; in favor of Aline Nelson in the sum of $2,000, and in favor of the remaining plaintiffs and the intervenor as prayed for, including attorney fees of $50 for the compensation insurer’s attorney, but rejecting all demands as to Del Cryer personally,
 

 From this judgment the Employers Casualty Company appealed, and the Nelsons, answering the appeal, asked that the judgment be amended by increasing the awards to them to the amounts originally prayed for. The matter is now before us to review the judgment of the Court of Appeal for the Second Circuit reversing the judgment of the district court and lismissing the suit. See 29 So.2d 810.
 

 Since the plaintiffs did not appeal from the judgment dismissing their suit against Del Cryer personally and there is no question but that the car was not being used by Robinson in the course of his employment at the time of the accident, or that this accident was caused by the gross and palpable negligence of Hosea Robinson in stretching the cable attached to a winch on the back of the Diamond T truck taut across a much travelled highway and anchoring it to a high-line pole on the other side about a foot from-the ground, without any warning to passing motorists that the cable, invisible in the gathering dusk, was there, the primary issue we are called upon to determine is the insurer’s liability under the omnibus coverage clause in the light of the facts of this case.
 

 Under Section 1 of the Insuring Agreements, coverages A and B, the insurer is obligated to pay on behalf of the insured such sums as he may be liable for as the result of bodily injury (including death) and damage to property “caused by accident and arising out of the ownership,
 
 *985
 
 maintenance, or use,” of the Cryer truck, and in Section III under this same heading it is stipulated that the unqualified word "insured” as used in the policy “includes the Named Insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the Named Insured.”
 

 The record shows that Del Cryer, upon the recommendation of his father, employed Hosea Robinson as a truck driver on a monthly basis, subject to call at all times, for the purpose of hauling all of the necessary fuel and equipment for his rig operations in the Diamond T truck owned by him, subject to the approval of P. E. Haynes, who was in charge of the field operations at the time. After Haynes had interviewed and approved Robinson’s employment, he turned the truck over to him with the keys. In addition to his regular ■duties as truck driver, • Robinson was also ■called upon to keep the truck properly repaired and serviced and to transport the ■“roughnecks” employed by Cryer from the bus stop in front of his (Robinson’s) home to the drilling operations 3 miles away and back to the bus stop. Because of the nature ■of these duties, the truck was, of necessity, under Robinson’s control at all times. At night it was parked in a public roadway directly outside Robinson’s window and in front of his house, his employer having been assured by the highway patrol that there would be no objection to it being thus parked without the required flare signals. It is conceded that during the entire time he was employed by Cryer this truck was in his exclusive custody.
 

 The record further shows that Robinson was never instructed by Cryer or Haynes that the use of the truck was restricted to business purposes, although about a week after his employment Cryer did tell him he could not haul anything in the truck for anyone else because this use of the truck was not authorized under the truck license and was not covered by the insurance. Robinson therefore used the truck for his own personal convenience, driving 20 miles to Minden on occasion and 12 miles to Bossier City to purchase groceries, and attend to other personal and family matters.
 

 On the day of the accident, after Cryer had told the men around noon that they could knock off for the afternoon and do their Christmas shopping, Robinson took his co-workers to the bus stop and then went to his house to pick up his wife. Finding she had gone to Shreveport, he waited until she returned around 2:30 p. m. and then drove with her to his brother-in-law’s some distance away, where they were killing and dressing a hog. When it was discovered that the salt supply was insufficient to preserve the meat, Robinson and his brother-in-law drove in to Minden to get some salt and it was while they were on the way back that he drove off the edge
 
 *987
 
 of the road and slid into the ditch while attempting to pass a car on the curve. The accident occurred while he was attempting to extricate the truck from this ditch.
 

 The defendant’s contention, as expressed in its brief and in which it was upheld by the Court of Appeal for the Second Circuit, is that when Robinson reached his home on this day and parked the truck his permission to use it terminated and “could not be revived without his employer’s consent before Monday morning when he was to drive the truck to the drill site.”
 

 In Parks v. Hall, 189 La. 849, 181 So. 191, 194, we held the insurer liable under a similar omnibus clause for the damages sustained by the plaintiffs when the chauffeur Hall, who had been instructed by his employer, the insured, not to use the car except in the course of his employment, nevertheless after having been told to have the car serviced at a specific garage went on a mission of his own several miles away when he found the grease racks at the garage occupied, becoming involved in the accident that caused the injury to the plaintiffs on his way back, our conclusion being that “the permission of the assured to Hall to use the car in the first instance, irrespective of the use to which he put the car while iri his possession was ‘permission of the assured’ within the meaning and contemplation of the ‘omnibus clause’ * *
 

 The only real difference between the omnibus clause in the Parks case and the case we are now considering is that the word “actual” appears before the word “use”; but we think, as was held by the Court of Appeal for the Parish of Orleans in the case of Haeuser v. Ætna Casualty Company, La.App., 187 So. 684 (in which we refused writs on the ground that the judgment was correct), that the word “actual” in this place neither adds nor detracts from the insurer’s liability under this omnibus clause.
 

 As pointed out in the Parks case [189 La. 849, 181 So. 193], “‘An insurance policy is a contract and the rules established for the construction of written instruments apply to contracts of insurance.’ 14 Ruling Case Law, § 102, p. 925; Wallace v. Insurance Co., 4 La. 289; Brown v. Life & Casualty Ins. Co., La.App., 146 So. 332; Civ.Code, arts. 1901, 1945. In accordance with this rule ‘an automobile collision policy must be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto. The language employed in the policy is to be construed so as to effectuate the insurance and not for the purpose of defeating it; therefore, if the language used is ambiguous or admits of two constructions, it will be construed in favor of insured and against insurer in such a way as to protect the interest of insured who has paid a consideration for the indemnity. * * * ’ 42 Corpus Juris, § 356, pp. 790, 791; Heiman v. Pan American Life Ins. Co., 183 La.
 
 *989
 
 1045, 165 So. 195; Travia v. Metropolitan Life Ins. Company, 186 La. 934, 173 So. 721.”
 

 In the policy in the instant case we find the statement in Item 5 that the purpose for which the insured automobile is to be used is “commercial” and in this same item the term “commercial” is defined “as use principally in the business occupation of the Named Insured * * *
 
 including occasional use for personal, pleasure; family and other business purposes.”
 
 (Italics ours.)
 

 Thus it may be seen that under the express terms of the policy it was contemplated by the parties that the use of the .truck by Robinson would include his use of it for his personal convenience and family purposes. Hence, we think it is significant that the only instructions given Robinson by Cryer with respect to the use of the truck was that he should not haul anything in the truck for anyone else because such use of the truck was not only unauthorized under his truck license but was not covered by his insurance, necessarily implying that such use as was covered by the insurance was authorized.
 

 It is our opinion, therefore, that the authorities from other jurisdictions relied on by the defendant insurer have no application here since this court has adopted the view of this omnibus clause entertained by the majority of the jurisdictions. For an able and interesting review of the ,authorities on this subject, see the article by Ben R. Miller in 15 Tulane Law Review 422.
 

 This brings up for our consideration the claim1 of the Nelsons for an increase in the amount awarded them by the lower court, which amounts the defendant contends are excessive and should be substantially reduced. We feel that the trial judge who, in addition to hearing the evidence in the case, had an opportunity to observe the Nelsons, was in a better position than we are to evaluate the extent of their injuries and we do not feel justified in disturbing the awards made by him after our review of the evidence.
 

 For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is annulled and set aside, and it is now ordered that the judgment of the district court be affirmed; all costs to be paid by the defendant insurer, Employers Casualty Company.
 

 HAMITER, J., concurs in the decree.