PONDER, Justice.
The plaintiff brought suit against the defendant seeking to recover damages for personal injuries and medical expenses arising from injuries he received in an automobile collision. The district judge gave judgment in favor of the plaintiff in t'he amount of $2,000.00 for damages for the personal injuries, and $150.00 for his medical bill. On appeal, the Court of Appeal for the Second Circuit, La.App., 33 So.2d 554, reversed the judgment and rejected the plaintiff’s demands. A review was applied for and granted by this Court.
The facts in the case and the issue presented are well stated in the opinion handed down by the Court of Appeal, as follows
“One A. K. Gillis, the named insured under a policy of liability insurance: issued by the defendant, Indemnity Insurance Com-', pany of North America, the owner of a-truck usc-d in the nature of a bus, as hereinafter set forth, entered into a contract-with the Louisiana & Arkansas Railway Company under which he hired the truck, to, the railroad for the purpose of transport *351 ing labor from the Town of Coushatta in Red River Parish, Louisiana, to various points on the railroad right-of-way and return. After working hours, upon the return of the truck to Coushatta, it was parked in a vacant area of property of the railroad company which lay between the hotel and the depot. This arrangement had originally been followed as a matter of convenience to the driver of the truck who roomed at the hotel, and was continued without change by the succeeding driver, who is the individual involved in the incidents hereinafter related. At the time of the accident which gave rise to this action the driver of the truck was one C. D. Selby, an employee of both the L. & A. Railroad Company and Gillis, the owner of the truck, being paid regular wages by the railroad company for the working day and additionally receiving pay from Gillis at the rate of $30.00 per month for his services performed in driving 'the truck to the points on the right-of-way, where work was in progress, and return. Selby worked directly under the supervision of one Bert Min-chew, an employee of the railroad company. It is conclusively established that Selby had been positively instructed by both Gillis and Minchew that the use of the truck was to be confined exclusively to the one purpose of transporting laborers to and from their work on the railroad, and there is no evidence that there had been any previous disregard of these instructions nor any other use of the truck except for occasional trips to a local filling station for the replenishment of its fuel.
“It was the custom of Selby, the driver, on returning to Coushatta sometime around 5 :00 o’clock in the afternoon to park the truck in the space described, where it was left overnight. The truck was not locked, the key to the ignition switch having been lost, and it was necessary to manipulate the ignition wires in lieu of using a key.
“On the day of the accident, September 4, 1943, the driver, Selby, brought the truck to Coushatta and parked the same in the accustomed place at or about 5 :00 o’clock in the afternoon. According to the undisputed testimony of one of plaintiff’s witnesses, a negro by the name of Ben Washington, who was an assistant foreman on the railroad work, Selby and another white man invited the witness and two other negroes to drive up to Loggy Bayou, which is about seventeen miles from Coushatta, that night. The party was made up, and embarked on its expedition in the truck about 7:30 or 8 :00 o’clock that night, the point of departure being from the truck’s described parking space. The witness, Washington, further testified that he asked Selby if he had permission to use the truck for the purpose of this pleasure jaunt and Selby replied in the negative, but insisted that he intended to bring the truck right back and that they would be gone only for a little while.
“The attraction at Loggy Bayou appears to have been a saloon which was patronized *353 by all members of the party, not only to the extent of a few assorted drinks of whiskey and beer but also by -tihe purchase of packaged goods of these substances.
“On the return trip on Highway 71, at a point some three or four miles from Coush-atta, the truck, recklessly driven at a high rate of speed by Selby, who was allegedly in an intoxicated condition, crashed into a passenger automobile parked on the highway while its driver, plaintiff’s son-in-law, was attempting to repair some motor trouble, assisted by plaintiff, who was holding a flashlight. As a result o'f the accident plaintiff sustained injury.
“At the instance of some of the other members of the party, Selby was prevailed upon to bring the truck to a stop at a point Which was a considerable distance down the highway, and all packaged evidences of intoxicants were disposed of by being thrown into the bushes at the side of the road.
“Within a few days after the accident Selby was discharged by tlhe railroad company and his subsequent whereabouts apparently became a matter of speculation and conjecture since there is no evidence thereto in the record.
“The negligence of Selby, the driver of the truck, is conclusively established, and, likewise, it is certain that at the time of the accident Selby was acting outside of and beyond the course, scope and purpose of his employment. It follows that apy questions concerning negligence and the applicability of the doctrine of respondeat superior have passed out O'f the case.
“The sole issue in the case before us, therefore, involves an interpretation of the familiar omnibus clause embodied in the policy of insurance issued by defendant under which Gillis, the owner of the truck, was the named insured, and a determination of the application of this clause under the facts in the case before us.”
We find also the following statement in the opinion of the Court of Appeal:
“The reasons advanced, as above enunciated, unquestionably are conclusive as to Selby’s possession, custody and control of the truck, but we do not find that any of them are valid arguments in support of the proposition that the use of the truck by Selby at the time of the accident was within the ‘permission’ of the insured under the provisions of the omnibus clause of the policy contract.”
The omnibus clause in the insurance policy under which the plaintiff seeks to recover reads as follows:
“Definition of ‘Insured.’ Except where specifically stated to the contrary, the unqualified word ‘insured’ wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes not only the named insured but also any person while using the auto *355 mobile and .any person or organization legally responsible for the use thereof, provided the declared and actual use of the automobile is ‘pleasure and business’ or ‘commercial,’ each as defined herein, and provided further the actual use is with the permission of the named insured.”
The omnibus clause involved in this case is similar to the one we had under consideration in the case of Parks v. Hall, 189 La. 849, 181 So. 191, except that the word “actual” appears before the word “use”. The word “actual” as used does not add to or detract from the insurer’s liability. Stanley v. Cryer Drilling Company, 213 La. 980, 36 So.2d 9. In the Parks case this Court adopted the rule followed by a majority of the courts of this country to the effect that the permission of an assured to a person to use a car in the first instance, irrespective of the use to which the person put She car while it was in his possession, was “permission” of the assured within the meaning and contemplation of the omnibus clause.
In an article by Ben R. Miller, a prominent member of the Baton Rouge Bar, in 15 T.L.R. 422, wherein the jurisprudence of other states was reviewed, it is pointed out that the majority rule is to the effect “that only ‘permission,’ expressed or implied, at the outset, or initially, is necessary.” It is also pointed out in this article that the rule followed by some of the states, necessitating the consideration of the extent and effect of the particular “deviation” involved, presents no harmonious test by which tihe extent of the “deviation” can be classified. In the Parks case we adopted the majority rule because we thought it was the best rule and would establish a definite rule to guide our courts instead of leaving them in a quandry and uncertain as to the extent and effect of any particular deviation without a harmonious test to guide them. We have adhered to the rule since it was laid down in the Parks case and recently applied in the case of Stanley v. Cryer Drilling Company, supra. The rule is now well established in our jurisprudence and we see no just reason to depart from it.
In the present case, Selby had the initial permission of the insured to use the car and it was placed in his possession and under his control. He alone used the car. It was in his possession and under his control at the time he took it from the place where it was parked and at the time of the accident. Under such circumstances any instructions given Selby as to the use of the car or whether there had been a deviation from the instructions are immaterial and of no moment. This case comes clearly within the rule laid down in. the Parks case.
For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is reversed and set aside and the judgment of the district court is reinstated and affirmed. All costs to be paid by the defendant.
*357 O’Niel'l, C. J., takes no part.