50 So.2d 838 (1951)
COLLARD
v.
GLOBE INDEMNITY CO.
No. 3339.
Court of Appeal of Louisiana, First Circuit.
March 2, 1951.
Thos. F. Porter, Thos. L. Raggio, Lake Charles, for appellant.
*839 Moss & Graham, Lake Charles, for appellee.
ELLIS, Judge.
This is a suit in which the plaintiff is seeking to recover $780.00, the amount paid by him as a compromise settlement to third parties for damages suffered in an automobile accident which occurred on February 14, 1948.
Defendants filed an exception of no cause or right of action which was sustained by the lower court, and it is from this judgment that the plaintiffs have appealed.
Plaintiff alleged that on July 11, 1947 he obtained an insurance and indemnity policy from the defendant, covering a 1940 Diamond 1½ ton truck, which policy was to remain in effect until July 11, 1948, which covered plaintiff against all loss incurred by reason of the liability imposed upon him by law for damages because of bodily injury or property damage sustained by any person or persons, caused by accident and arising out of the ownership, maintenance and use of this 1940 Diamond 1½ ton truck. This insurance policy contained the following provisions under "Insuring Agreements:"
"VIII. Automatic Insurance for Newly Acquired Automobiles
"If the named insured who is the owner of the automobile acquires ownership of another automobile and so notifies the company within thirty days following the date of its delivery to him, such insurance as is afforded by this policy applies also to such other automobiles as of such delivery date:
"(a) if it replaces an automobile described in this policy, but only to the extent the insurance is applicable to the replaced automobile, or (b) if it is an additional automobile and if the company insures all automobiles owned by the named insured at such delivery date, but only to the extent the insurance is applicable to all such previously owned automobiles.
"This insuring agreement does not apply: (a) to any loss against which the named insured has other valid and collectible insurance, or (b) except during the policy period, but if such delivery date is prior to the effective date of this policy, the insurance applies as of such effective date.
"The named insured shall pay any additional premium required because of the application of the insurance to such other automobile. The insurance terminates upon the replaced automobile on such delivery date."
Plaintiff further alleged that in November or December of 1947 he purchased an old Diamond T 1½ ton log truck which would not run and had to be completely overhauled and rebuilt, and that he took the latter truck to his home shop where he proceeded to overhaul it, complete with a wrecker boom and winch, making this old truck into a wrecker, and that the rebuilding was completed on January 18, 1948, and put into service as such on that date, and that it could not have possibly been used as such until that date, and that this rebuilt wrecker replaced the 1940 Diamond T 1½ ton truck which was also a wrecker and which was described in the policy. Plaintiff then alleged that the rebuilt wrecker was involved in an accident on Feb. 14, 1948, and that damages were suffered by third parties for which plaintiff effected a compromise after having been sued by the injured parties, and defendant's refusal to defend the suit.
Plaintiff further alleged that defendant was notified of this accident on the date that it occurred, and that on the following day, Feb. 15, 1948, an insurance adjuster representing the defendant, investigated the accident and was apprised of the fact that the wrecker belonging to the plaintiff which was involved in the collision was not the same as the one described in the policy, and on Feb. 16 or 17, 1948, defendant was requested to place the same under the policy, which the defendant refused to do, denying any liability.
Plaintiff-appellant contends that no delivery within the meaning of the automatic insurance clause, supra, was made to him until the date that this old salvaged Diamond T. truck had been rebuilt and was fit for use as a wrecker, which date was alleged in the petition to be January 18, 1948, and that as he had thirty days from this date of *840 delivery to him in which to notify the defendant company if he replaced an automobile described in the policy, that plaintiff had complied with this provision for he had notified the defendant company on Feb. 16, 1948.
Defendant-appellee maintains delivery of this old salvaged Diamond T. Truck was made in November or December, 1947 when the truck involved in the accident was purchased, according to the petition.
It will be noted that this automatic insurance clause states that "if the named insured * * * acquires ownership of another automobile and so notifies the company within thirty days following the date of its delivery to him, such insurance as is afforded by this policy applies also to such other automobiles as of such delivery date * * * if it replaces an automobile described in this policy." (Emphasis added.)
Plaintiff-appellant relies upon the case of Beard v. Peoples Industrial Life Insurance Company of Louisiana, La.App. 2nd Circuit, 5 So.2d 340, 342, in which Justice Hamiter, speaking for the Court, said:
"In the construction and interpretation of contracts of insurance, just as with other contracts, the intention of the parties is of paramount importance. This intention is determined in accordance with the plain, ordinary and popular sense of the language which they have used in the agreement, and by giving consideration, on a practical, reasonable and fair basis, to the instrument in its entirety.
"If the intention is clear, the courts are without right to change the contract in any particular; it is the law between the parties. But if the policy's language is uncertain or ambiguous, and more than one construction is possible, the construction most favorable to the insured will be applied. Also, if one of two possible interpretations would lead to an absurd conclusion it must be abandoned, and that which appears to be more consistent with reason and probability will be adopted.
"The insurance company prepares the contract, the insured not being consulted as to the form to be used, and all doubts with reference to the meaning intended must be resolved against the company."
Also, the case of Stanley v. Cryer Drilling Company, 213 La. 980, 36 So.2d 9, 12, in which Chief Justice Fournet is the organ of the Court, it states:
"`an automobile collision policy must be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto. The language employed in the policy is to be construed so as to effectuate the insurance and not for the purpose of defeating it; * * *' [Parks v. Hall, 189 La. 849, 181 So. 191.]"
The language used in the automatic insurance clause, supra, is neither uncertain nor ambiguous. It is plainly to the effect that any insured acquiring ownership of another automobile and notifying the company within 30 days following date of its delivery to the insured that such insurance as is afforded by the policy applies to the acquired and delivered automobile if it replaces an automobile described in the policy. In the present case, the petition alleged that the ownership of the old salvaged Diamond T. log truck was acquired in November or December, 1947, and that "petitioner took said truck to his auto shop."
Article 2477 of the Revised Civil Code defines "delivery" as the "transferring of the thing sold into the power and possession of the buyer." According to plaintiff-appellant's petition, the old Diamond T. 1½ ton truck was transferred into the "power and possession" of the plaintiff-appellant in November or December, 1947. Consequently, there was delivery of the vehicle in November or December, 1947, and, therefore, on the face of the petition, more than 30 days had elapsed before the notice required under the terms of the automatic insurance clause was given to the defendant-appellee.
Appellant however contends that this Court should be guided by the reasoning and decision of the Supreme Court of Appeals of West Virginia in Thompson v. State Automobile Mut. Ins. Co., 122 W.Va. 551, 11 S.E.2d 849, 850.
*841 We quote the material portions of the Court's decision as follows:
"* * * The policy contains, among others, the following provisions, the construction of which is in issue: `2. Automatic Insurance for Newly Acquired Automobiles. If the named Insured who is the owner of the automobile acquires ownership of another automobile, such insurance as is afforded by this policy applies also to such other automobile as of the date of its delivery to him, subject to the following additional conditions: * * * (2) if the company does not insure all automobiles owned by the named Insured at the date of such delivery, insurance applies to such other automobile, if it replaces an automobile described in this policy and may be classified for the purpose of use stated in this policy, but only to the extent applicable to the replaced automobile; (3) the insurance afforded by this policy automatically terminates upon the replaced automobile at the date of such delivery; and (4) this agreement does not apply * * * (b) unless the named Insured notifies the company within ten days following the date of delivery of such other automobile * * *, nor (d) unless the named Insured pays any additional premium required because of the application of this insurance to such other automobiles. * * *.'
"At the time of taking out the insurance, Smith had nine trucks, three without and six with tanks. The latter group, covered by the policy, were at the time used in hauling drip gasoline from gas wells of the United Fuel Gas Company and Mullins Gas Company in Poca District, Kanawha County, to the refinery. The truck involved in the instant case was purchased on December 30, 1937. When purchased, it was not equipped with a tank. A license therefor was obtained on January 7, 1938, and thereafter it was used to a limited extent in general hauling. About March 5, 1938, one of the fleet of six trucks was so badly damaged that its chassis was cut up and sold for junk, and the tank therefrom installed on the truck which Smith had purchased in December. The latter truck was thereupon put in service, with the remaining five tank trucks, hauling drip gasoline. On March 8, 1938, while in such service, the last-mentioned truck struck the plaintiff. On the day following, the insurer, upon request of insured, executed the endorsement, heretofore referred to, making the substitution in the policy.
"The insurance company takes the position that the substituted truck was not covered by the policy at the time of the accident. Both it and the plaintiff assert that the issue of coverage is dependent upon a proper interpretation of the automatic provision, heretofore set out in haec verba. Before giving further attention to this provision, it is well to consider some rules of construction.

* * * * * *
"Defendant's counsel rely upon the part of the automatic provision of the policy to the effect that, subject to certain named conditions, if the insured acquires another automobile, `such insurance as is afforded by this policy applies also to such other automobile as of the date of its delivery to him * * *.' (Italics supplied.) They argue that because the truck involved here was purchased by and delivered to the insured on December 30, 1937, and notice thereof not given to the insurer until March 9, 1938, the day after the accident, the automatic provision did not operate to insure the newly acquired automobile as of March 5, 1938, the date of the substitution; and that the insured, having failed to notify the company within the ten-day period, following the acquisition of the new truck, has forever lost the opportunity or means of bringing such newly acquired truck within the operation of the policy, unless by agreement the company should extend to him such right.

* * * * * *
"As insurer's counsel suggest, the automatic provision was inserted in the policy for the benefit of the insured, and there is respectable authority to the effect that the burden of proof rests upon the insured to bring himself within its terms by making a satisfactory proof of the extended coverage. Appleman, Automobile Liability Insurance (1938) 147. But because this provision inures to insured's benefit, all the *842 more reason that, under the liberal construction rule, every reasonable effort, not however amounting to change in phraseology, should be invoked to secure that benefit to the insured.
"Plaintiff's position that the ten-day period begins with the substitution would indeed be untenable if the automatic provision of the policy stood alone without the conditions contained therein. The words `as of the date of its delivery to him', standing alone, clearly refer to a manual delivery of the automobile to the insured. The second condition of this provision specifies that `if the company does not insure all automobiles owned by the named Insured at the date of such delivery, insurance applies to such other automobile, if it replaces an automobile described in this policy and may be classified for the purpose of use stated in this policy, but only to the extent applicable to the replaced automobile.' There the delivery contemplated is that provided for in the main body of the provision. The third condition provides that the insurance terminates automatically upon the replaced automobile `at the date of such delivery' and refers to manual delivery. The fourth condition provides that the agreement does not apply, `(b) unless the named Insured notifies the company within ten days following the date of delivery of such other automobile.' Here the word `such' does not operate to modify the word `delivery'. If it was intended by this condition that the delivery of the newly acquired automobile referred to the manual delivery provided for in the preceding parts of the automatic clause, the insurer could and should have inserted the word `such' before the word `delivery', or should have used some other language which would have clearly referred to the kind of delivery specified in the first part of the provision. This fourth condition alone provides for the ten-day notice to the insurer. Relying upon it, the insurer's counsel say that the lapse of ten days after the acquisition of the replacing truck precluded the automatic extension of the policy thereto. Our view of condition four, read in connection with the other parts of the automatic provision, renders the earlier words of the policy, to the effect that the insurance should apply to a newly acquired automobile `as of the date of its delivery to him', not decisive of this case. * * *"
After a careful consideration of the Thompson case, supra, we are of the opinion, that applying the same reasoning to the language of the policy in the case before us, it is authority for affirming the judgment of the District Court whereby an exception of no cause of action was maintained. In the cited case, as shown by quotations therefrom, the Court considered the automatic provision of the policy with respect to the meaning of the word "delivery" therein. The opinion stated that the words, "as of the date of its delivery to him," standing alone, clearly referred to a manual delivery of the automobile to the insured. It was further stated that the use of the words "such delivery" in the second condition of the provision also contemplated a manual delivery as provided for in the main body of the provision. The use of the phrase "at the date of such delivery" also referred to manual delivery. However, the Court held that the fourth condition, "unless the named Insured notifies the company within ten days following the date of delivery of such other automobile" did not mean the same kind of delivery, that is, manual delivery, provided for in the preceding parts of the automatic clause, for if it was intended to give the word the same meaning, the insurer could and should have inserted the word "such" before the word "delivery", or should have used some other language which would have clearly referred to the kind of delivery specified in the first part of the provision.
It would seem that the policy in question was written with the Thompson case in mind, as each provision of the automatic insurance for newly acquired automobiles, under the same reasoning as in the Thompson case, referred to a manual delivery, for after the use of the word "delivery" in the beginning of the provision it is always modified by the word "such", referring back to the initial delivery intended. We do not intend to approve or disapprove *843 of the reasoning used by the Court in the Thompson case to change the meaning of the word delivery in the 4th condition of the policy considered therein, but merely to hold that by using and accepting the same reasoning as applicable to the present case it is authority for sustaining the exception and affirming the Judgment of the District Court.
Also, the phrase "acquires ownership of another automobile" means the acquisition by donation or purchase. In the present case the ownership of the old salvaged Diamond 1½ ton log truck was acquired by purchase in November or December, 1947, and delivery made at the same time. Therefore, a notification of replacement which was made on January 18, 1948, given on February the 16th or 17th, 1948, came too late to give the insured protection under the automatic insurance provision.
It is contended that the plaintiff had nothing to insure or no insurable interest in this old Diamond T 1½ ton truck on the date of its acquisition and delivery to him, and it was only after adding to it and building it into a wrecker which was completed on January 18th, 1948 that there was anything to insure. While this may be true, the plain provision and language of the contract should not be stretched or warped so as to include or afford a protection to the insured not intended under a reasonable and fair interpretation of the policy. The plain condition of the policy meant that the insured, in order to take advantage of the automatic provision should, within thirty days of the acquisition and delivery to him of another automobile, have put it in such condition that it would be insurable and could have replaced the automobile originally covered. For example, in the present case if the plaintiff had been able to complete the repairs or changes he wished to make in the old Diamond T truck which he purchased and which was delivered to him in November or December, 1947 on or before 30 days from the date of its delivery, and had notified the plaintiff within the thirty days of the replacement of the original wrecker, then the automatic insurance provision would have applied in this case. To hold in the present case that the plaintiff had thirty days from January 18th, 1948, the date he alleged he completed the conversion of the old truck into a wrecker and replaced the insured wrecker, would be to read or strike out the word "delivery" in the automatic insurance provision. The word "delivery" as used in the policy could not be given a meaning of say "delivery for replacement purposes." Throughout this provision it is clear that it means a manual delivery of the newly acquired automobile or motor vehicle, and then the insured may, if he so desires, replace an automobile already insured under the policy with the other one provided he notifies the insurance company within thirty days from the date of its delivery to him.
For the above reasons it is therefore ordered that the judgment of the District Court be affirmed, at plaintiff-appellant's cost.