HANNAH HOULIHAN, Plaintiff, *v.* BENJAMIN SELENGUT and JOHN BURNEEY, Individually and Doing Business under the Firm Name and Style of BEBERLY GARAGE, Defendants.

Supreme Court, Trial Term, New York County, February 8, 1941.

*Tessie L. Segel*, for the plaintiff.

*Evans & Rees* [*Fred H. Rees* of counsel], for the defendants.

COLLINS, J. This motion by the plaintiff to set aside a judgment dismissing the complaint presents the interesting question of the liability of the owner of an automobile who had stored it in a garage, leaving with the garageman the car keys, for injuries sustained by a pedestrian on a sidewalk, while the car was being driven by the garageman, in the absence of the owner. To put it differently: from the mere leaving of the keys with the garageman, can consent to drive the car out on the sidewalk be implied, so as to make the owner liable for the garageman's negligence, under section 59 of the Vehicle and Traffic Law?

Not only is the question interesting, but it is important, because leaving the car keys at the garage is a common practice. Indeed, the owner seldom has a choice, inasmuch as the practice is a usual requirement.

The facts are not webbed in dispute; they are uncontradicted. It is the inference from those facts that begets the divergence.

At about seven-thirty in the evening of July 21, 1938, the defendant Selengut, a resident of Massachusetts, stored his automobile at the garage of his codefendant, Burneey. Burneey insisted that Selengut leave the keys in the car. Selengut left his wife's keys in the car, went to his hotel to get his own keys, which, on returning to the garage, he exchanged for those of his wife. No negative instructions about moving the car were given. Nor positive, either. Selengut " supposed " the keys were left to enable Burneey to move the car if necessary. But Selengut was told that the car was left in a good position. The following day, while the plaintiff was walking on the public sidewalk fronting the garage, several feet from the entrance, Selengut's car, operated by Burneey, suddenly emerged from the garage and struck the plaintiff, causing injuries. Selengut was not present and had nothing whatever to do with the moving of his car, nor did he have any knowledge or express notice that the car would be moved. Rather, it was understood that the car would not be used during the period of storage. The garage was equipped with an elevator in the rear at the point furthest from the street entrance, the elevator being used to hoist cars to the upper floors.

In support of her case, plaintiff not only introduced an examination of Selengut before trial, but she called him to testify in her behalf.

Burneey defaulted and a verdict was directed as to him;. the plaintiff's damages against Burneey were assessed by the jury at $1,500. On Selengut's motion, at the end of plaintiff's case, the complaint as to him was dismissed. This dismissal is challenged

and the plaintiff, furthermore, moves to set aside the $1,500 verdict against Burneey as inadequate.

The plaintiff insists that her proof that Selengut owned the car established a *prima facie* case, and that the issue of implied consent under section 59 of the Vehicle and Traffic Law was a factual one to be resolved by the jury.

The complaint alleges that at the time of the accident the car was being "operated and controlled by the defendants, their agents, servant or employee * * *."

Section 59 of the Vehicle and Traffic Law (formerly Highway Law, § 282-e) provides that "Every owner of a motor vehicle or motor cycle * * * upon a public highway shall be liable and responsible for * * * injuries to person or property resulting from negligence in the operation of such motor vehicle, * * * in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner * * *."

The effect of this provision was discussed in *Psota* v. *Long Island R. R. Co.* (246 N. Y. 388, 393) as follows: "Prior to the enactment of this section, the law was that an owner was not liable for the negligence of a person to whom he had loaned his car, whether that person were a member of his family, a servant on a personal errand or a stranger. (*Potts* v. *Pardee*, 220 N. Y. 431; *Van Blaricom* v. *Dodgson*, 220 N. Y. 111.) The Legislature determined to change this law and did change it by this section of the Highway Law so as to make the owner liable for the negligence of a person to whom he loaned the car in connection with its operation upon the highway. Such person was no longer a stranger to the owner, but became to this extent the owner's agent. The owner assumed this liability under the law and took this risk in loaning his car. (*Fluegel* v. *Coudert*, 244 N. Y. 393.) But the Legislature went no further; it did not otherwise change any of the rules of liability; that is, it did not extend the liability of the master for the acts of his servant. It placed the borrower of a car in the same position toward the lender as that of master and servant, principal and agent, but it did not increase the liability of the lender beyond that of the master for those acts of his servant coming within the scope of his employment. The Legislature may not be presumed to make any innovation upon the common law further than is required by the mischief to be remedied. (*Dean* v. *Metropolitan Elevated Railway Co.*, 119 N. Y. 540, p. 547.)"

Thus, new relations and liabilities were created not based on the doctrine of *respondeat superior*. Consequently, though remedial,

the statute must be strictly construed. (*Matter of Andersen*, 91 App. Div. 563, 565; *Town of Hempstead* v. *City of New York*, 52 id. 182, 188; *Smith* v. *Boston & Albany R. R. Co.*, 99 id. 94, 98.) To be sure, " it must be given a construction which will result in a fulfillment of the purpose for which it was enacted * * *." (*Jackson* v. *Brown & Kleinhenz, Inc.*, 273 N. Y. 365, 369.)

The object of the statute " was to prevent an owner who had given permission, express or implied, for the use of his car from escaping liability by saying that it was not being used in his business. His permission for its use was made the basis of his liability. He was assumed to have the right to grant or withhold such permission. If it was being driven without his permission or contrary to his express orders no liability attached to him * * *. It nowhere appears in the statute that the Legislature intended that the vicarious liability created by its enactment should be visited upon one who could not prevent or control the use or operation of his car by withholding permission." (*Leppard* v. *O'Brien*, 225 App. Div. 162, 164, 165.)

" Knowledge is prerequisite to consent, and permission cannot be implied from mere user without proof of knowledge thereof." (*Atwater* v. *Lober*, 133 Misc. 652, 654; *Owen* v. *Gruntz*, 216 App. Div. 19; *Schwartz* v. *Lawrence*, 214 id. 559, 564.) " Every definition of ' suffer ' and ' permit ' includes knowledge of what is to be done under the sufferance and permission, and intention that what is done is what is to be done." (*Gregory* v. *United States*, 17 Blatchf. 325.) " Implied authority is actual authority circumstantially proved and is the authority the principal intended his agent to possess." (*Atwater* v. *Lober, supra*, p. 653.)

Can permission here be implied from the mere leaving of the keys? The test seems to be whether this single circumstance would suggest or indicate to a reasonably prudent person that the car must be, or will be, driven on or partially on the highway.

A cognate case is *Zuckerman* v. *Parton* (260 N. Y. 446). There the owner left his car at a garage for parking, and also for the replacement of his battery. While the garageman's son was operating the car on the highway, the plaintiff was injured.

The court appositely observed (at p. 449): " Section 59 of the Vehicle and Traffic Law has somewhat restricted the common-law rule regarding non-liability for the negligence of an independent contractor. * * * The restriction referred to comes in at this point. The statute refers to the use of the automobile with the permission, express or implied, of the owner. If, therefore, an owner leaves his car in a garage or repair shop to have such work

done upon it that a road test is necessary, and he has reason to know or to believe that the car is, or will be, used upon the public highway by the garage contractor in the necessary performance or execution of that work, then in such a case the use of the car is with the implied permission of the owner and he is liable for the negligence of the garage repair shop or its servants. Every class of work or repair done upon a car does not necessarily carry with it this implied permission. Perhaps it is seldom necessary for a garage man to use the owner's car upon the street or take it out of the shop for the purpose of making repairs or adjusting the equipment. We must limit this ruling, as we do, to the case where the circumstances or the nature of the work is such as to suggest or indicate to a reasonably prudent person that the car must be, or will be, used to accomplish the work or the repair."

It is not maintained that this offending car was to be repaired. Nothing whatever was to be done to it. Consequently, as I perceive it, there was nothing about the condition of the car, or about the circumstances, which would suggest or indicate to Selengut, as a reasonably prudent person, that the car " must be, or will be," driven out on the sidewalk. At most, leaving the keys at the garage gave Burneey implied permission to move the car *within the garage*, if necessary, or outside if need be in case of emergency, such as fire. But to infer permission to do what was here done would, I believe, be unreasonable. Suppose that in shifting cars in his garage Burneey had deemed it expedient to encircle the block, and another was injured in the process, would Selengut be responsible on the theory that a reasonably prudent person in like circumstances should have anticipated such a course?

Indubitably, consent to operate is a presumption often derived from mere ownership. (*Ferris* v. *Sterling*, 214 N. Y. 249, 253; *Piwowarsky* v. *Cornwall*, 273 id. 226.) But the presumption is rebuttable; it disappears " where upon all the evidence it appears that no permission was given." (*St. Andrassy* v. *Mooney*, 262 N. Y. 368, 371.) In the last-cited case it was pertinently said: " the owner is presumptively responsible for the manner in which it is driven even though it appear that the vehicle was not being used in his service or for his business, for the inference of permission is not excluded. None the less, the presumption of such responsibility also disappears where upon all the evidence it appears that no permission was given. (*Chaika* v. *Vanderberg*, 252 N. Y. 101. Cf. *Fluegel* v. *Coudert*, 244 N. Y. 393.) The burden of proof is always on the plaintiffs. They have met that burden in the first instance by the presumption arising from proof of ownership.

The operation of a motor vehicle without the consent of the owner is unlawful, and in the absence of explanation a logical inference of lawful operation with the owner's consent may be drawn from the possession of the operator. The defendant destroys the inference and the presumption resting thereon when he shows the true facts."

So, here, the presumption was destroyed by showing "the true facts." It, nevertheless, behooved the plaintiff to prove express or implied consent. This she did not do.

That was the situation in *Shortell* v. *Goldsmith* (136 Misc. 138), where it was said (at pp. 138, 139): "While plaintiff established a *prima facie* case as against Goldsmith by proving that he owned the automobile that Bender was driving, the proof introduced by the defendant showed that Goldsmith's car was being used without his knowledge or consent, and not for any purpose of his. There was no contradiction of this testimony, nor were the defendant's witnesses in any way discredited. The complaint as to Goldsmith, therefore, should have been dismissed. (*Der Ohannessian* v. *Elliott*, 233 N. Y. 326; *Fluegel* v. *Coudert*, 244 id. 393.)"

And in *Rathfelder* v. *Flag* (257 App. Div. 71; affd., 282 N. Y. 563) it was stated (at p. 73):

"Defendant's testimony was to the effect that he did not consent to the use by William Lucia of the plates nor did he have any knowledge of such use until after the accident; that Ring, the operator, was not known to him, was not in his employ and never had been. * * *

"In the circumstances we are of opinion that plaintiff's *prima facie* case of ownership and control was overcome by defendant's evidence."

The plaintiff's grievance that the court did not put Selengut to his proofs, is meritless. All the facts which could have been adduced were adduced by the plaintiff. She went beyond showing ownership. Her own case revealed the circumstances surrounding the storage of the car; her own proofs destroyed any presumption or inference of permission to drive the car out of the garage onto the sidewalk.

As was said in *Der Ohannessian* v. *Elliott* (233 N. Y. 326, 329): "What was there to submit to the jury? The story as told by the defendant Elliott and by his chauffeur Dimond is not improbable on its face, it is not unreasonable, is not contradicted by facts, circumstances or presumptions arising from the facts, and has nothing about it or in it to create suspicion."

The fact that Selengut gave his unchallenged version as a part of plaintiff's case, at plaintiff's instance, did not invalidate or weaken

the version. When plaintiff closed her case all the facts were in; the whole story was told; a complete picture was presented. Thereby the presumption was removed and no proof of permission, express or implied, remained.

In *Orlando* v. *Pioneer B. T. Supply Co.* (239 N. Y. 342), cited by the plaintiff, the car " was being used strictly in the defendant's business," and, moreover, there was a disputed question as to whether the driver was one of defendant's chauffeurs. Here, however, the car was not being driven in Selengut's business, Burneey was not Selengut's chauffeur, and Selengut could not have reasonably anticipated that Burneey would drive the car on the sidewalk. When one stores a car he assumes, and has a right to assume, that the car will " stay put," or that it will remain under the roof of the garage. Certainly he does not contemplate or anticipate that it will be removed from the garage.

Having successfully rebutted the presumption of implied permission, the complaint was, I think, properly dismissed. There were no disputed factual issues for the jury to pass upon.

As to the adequacy of the verdict against Burneey, that was a matter of the jury's discretion. I cannot hold the amount inadequate.

Accordingly, the motion is in all respects denied.