125 N.J. Super. 320 (1973)
310 A.2d 527
MICHAEL J. BRESLIN, JR. AND BRESLIN AND BRESLIN, ESQS., PLAINTIFFS,
v.
LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT. JOHN M. ARCADIPONE, PLAINTIFF,
v.
WESTWOOD FORD AND JAMES A. PETERSON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
October 2, 1973.
*323 Mr. E. Carter Corriston for plaintiffs Michael J. Breslin, Jr. and Breslin and Breslin, Esqs. (Messrs Breslin & Breslin, attorneys).
Mr. Philip C. Geibel for plaintiff John M. Arcadipone.
Mr. John R. Kingsland for defendant Liberty Mutual Insurance Company.
Mr. Frank R. Cinquina for intervenor-respondent Connecticut General Life Insurance Company (Messrs. Schwartz and Adolino, attorneys).
GELMAN, J.S.C.
These motions in two separate cases evolve from identical fact situations and present common questions of law. In each instance a New Jersey resident, employed in New York, was injured in an automobile accident in New Jersey. Disability benefits were paid to the employees by their respective New York employers' insurance carriers. Actions were commenced in New Jersey by the employees against third parties for injuries received in the accidents and resulted in the recovery of amounts in excess of the disability benefits received by the employees from the carriers, plus attorneys' fees and costs (computed on the whole sum recovered).[*] The carriers in these actions assert subrogation *324 rights under New York law to the full extent of the benefits paid, without allowance for costs or attorneys' fees incurred by the employees in effecting a recovery.
On their part the employees assert that (1) the enforcement of the New York statutory subrogation claims should be denied in their entirety because the claims conflict with the statutory law and public policy of New Jersey, or (2) at the very least and for similar reasons, the amounts claimed by the carriers are subject to an offset for the pro rata share of costs and attorneys' fees incurred in effecting the recovery against which the right of subrogation is being claimed.
The New York disability benefits law provides for full subrogation of the total amount of benefits paid to an employee in any recovery by the employee against a third party, so long as the amount recovered, after deducting attorneys' fees and expenses, exceeds the amount of benefits paid. Workmen's Compensation Law, § 227, McKinney's Consol. Laws, c. 67. As interpreted by the New York courts, the employee's attorney does not have a lien against and is not entitled to a fee for services rendered in effecting the recovery. See, e.g., Cianciosi v. Merchant's Mut. Ins. Co., 61 Misc.2d 867, 307 N.Y.S.2d 136 (Sup. Ct. 1970). The New York law is the same where third-party recovery has been effected after workmen's compensation benefits have been paid. Workmen's Compensation Law, § 29; Kussack v. Ring Const. Corp., 1 A.D.2d 634, 153 N.Y.S.2d 646 (Sup. Ct. App. Div. 1956), aff'd 4 N.Y.2d 1011, 177 N.Y.S.2d 522, 152 N.E.2d 540 (Ct. App. 1958); Privetera v. Hillcrest Homes, Inc., 29 N.J. Super. 591 (Law Div. 1954).
Under the comparable New Jersey statute a disability benefits carrier is not accorded any right of subrogation *325 against a third-party recovery, see N.J.S.A. 43:21-25 et seq., and in the case of workmen's compensation benefits the carrier's right of subrogation is subject to payment of an attorney's fee on the amount recovered not to exceed 33 1/3% plus expenses not to exceed $300. See N.J.S.A. 34:15-40(b), (e).
The fact that the New Jersey statutory disability benefits scheme does not create a right of subrogation with respect to claims against third parties does not compel New Jersey courts to deny the carriers' statutory rights under New York law. Viewed as a choice-of-law question, New York's disability benefits law as enunciated in § 227 must govern the existence vel non of the right of subrogation. The place of employment here was New York and the benefits were paid to the injured employees by reason of their New York employment and pursuant to the statutory scheme of that state. While choice of law in this situation is not controlled by the application of mechanistic formulae as such, it is evident that fundamental fairness as well as the need for certainty of result commits our courts to look to the laws of the state pursuant to which the benefits were paid to determine questions affecting the essential rights of the employers, co-employees, as well as insurance carriers. See Stacy v. Greenberg, 9 N.J. 390; Privetera v. Hillcrest Homes, Inc., supra; but see, Wilson v. Faull, 27 N.J. 105 (1958).[2]
*326 However, it does not automatically follow that the choice of New York law on the first issue compels us to choose New York law in determining the status of the asserted attorneys' liens. It bears repeating that choice of law is no longer the product of the application of ritualistic concepts such as precedural vs. substantive law, place of contracting, place of injury, etc. See Wilson v. Faull, supra; Heavner v. Uniroyal, Inc., 63 N.J. 130, 140-141 (1973). Where choice-of-law questions are presented we must scrutinize the interests and public policy of the forum state, the contacts of the parties and of the transaction with the respective jurisdictions whose laws may be at variance, and the juridical as well as the social consequences of the selection of the law to be applied. Rose v. Port of N.Y. Auth., 61 N.J. 129, 139-140 (1972); Pfau v. Trent Aluminum Co., 55 N.J. 511, 514-515 (1970). We ought, also, to discourage "forum shopping" to obtain the advantage of more favorable statutory or decisional law in the forum state. See Ehrenzweig, "Contracts in the Conflict of Laws," 59 Colum. L. Rev. 973, 1021 (1959). It is, however, clear that within these guidelines, rationally applied, there is no constitutional impediment to the selection of forum law over foreign law, even where the latter creates or gives rise to the cause of action. See Carroll v. Lanza, 349 U.S. 408, 413, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); Pacific Employers Ins. Co. v. Industrial Accid. Comm'n, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939).
"Forum shopping" is obviously not in issue here. These actions are common, garden-variety negligence suits brought by New Jersey residents in New Jersey courts and arising out of New Jersey accidents. Likewise, the agreements for the retention of the respective attorneys to prosecute the third-party claims were concluded in this State. *327 Thus, with respect to all issues affecting the employees' rights of action, whether we apply mechanical choice-of-law rules or the more enlightened contacts test, New Jersey law applies and determines the result.
A long line of New Jersey judicial and statutory precedent has established the priority and status of the attorney's lien in this State. See, e.g. State v. Otis Elevator Co., 12 N.J. 1, 5 (1953); Visconti v. M.E.M. Machinery Corp., 7 N.J. Super. 271, 274-275 (App. Div. 1950); Lehigh & N.E.R. Co. v. Finnerty, 61 F.2d 289 (3 Cir.1932); N.J.S.A. 2A:13-5. It is likewise established in this State that one who derives a benefit from the services rendered by an attorney, whether the party involved retained the attorney or not, ought in good conscience and as a matter of fundamental fairness bear at least a pro rata share of the costs of those services to the extent of the benefit derived. Klacik v. Kovacs, 111 N.J. Super. 307 (App. Div. 1970). The rationale of that policy is set forth in Klacik as follows:
We conclude that the more equitable rule is that espoused by the majority * * *. Clearly, had Home decided to institute its own action, or intervene in the action instituted by plaintiffs against Kovacs, it would have been required to incur expenses including an attorney's fee for such action. To establish an artificial rule which would provide an insurer with the right to sit back and permit its insured to proceed with an action, expecting to share in the avails of that proceeding without the burden of any of the expense, occurs to us to be anomalous. [at 312]
Of course, in Klacik the subrogation right arose as a matter of private insurance contract and not by virtue of the law of a sister state. But surely the origin of the subrogation right does not vitiate the public policy of this State as expressed in its decisional or statutory law. After all, public policy is nothing more nor less than an expression of what the state  speaking through its legislature and its courts  deems to be fundamentally fair in the complex relations within a just and ordered society.
*328 For the purpose of this decision, then, it is accepted that New Jersey public policy favors the recognition of an attorney's lien on moneys recovered and inuring to the benefit of a subrogee. Were this the end of the inquiry it may be doubted whether that policy, however firmly embedded in our law, is sufficient to deny exact enforcement of the statutory law of a sister state. As has often been said, the mere fact that one state, albeit the forum state, views the resolution of a particular issue in a different way than its neighbor, is not necessarily reason to preclude enforcement of a foreign statute within its borders. See, e.g., Interstate Wrecking Co. Inc. v. Palisades Interstate Park Comm'n, 57 N.J. 342 (1971).
But there are pragmatic considerations here as well. Every attorney practicing in this field and judges know full well that the settlement of third-party actions when subrogation claims are lurking in the background are often impossible without the cooperation of the subrogee in compromising its claim, especially if the subrogee refuses to bear its pro rata share of litigation fees and costs. It may be judicially noticed that hundreds of thousands of New Jersey residents are employed out-of-state, principally in New York, and the volume of third-party negligence litigation in this State, where disability benefits have been paid under the New York statute, is not insignificant. The State of New Jersey and its citizens, not just the litigants here, have a legitimate interest in promoting settlement of court controversies to avoid calendar congestion. That interest militates in favor of a rule which will remove an impediment to the settlement of disputes in our courts. New Jersey, as the forum state, thus has an important and substantial interest in promoting its policy, and it can subject the carriers' statutory subrogation liens to the payment of attorneys' fees and expenses in furtherance of that policy. Cf. Rodes, "Workmen's Compensation," 11 Rutg. L. Rev. 140, 156 (1956).
It is therefore held that the subrogation claims of the disability insurance carriers in these actions are subject to *329 the payment of a pro rata share of the attorneys' fees and expenses necessary to effect recovery from the third-party tortfeasors.
It should also be noted that the conclusion reached here is probably consistent with the result that would obtain if these cases were decided by a court in New York. On at least one occasion a New York court has applied foreign law to sustain the enforceability in New York of a contractual claim for attorneys' fees, although the claim asserted was assumed to be against the public policy of and invalid under New York law. First Nat'l Bank v. Fleitman, 168 App. Div. 75, 153 N.Y.S. 869 (Sup. Ct. App. Div. 1915). The court ruled that the law of the place of contracting controlled the validity of the claim for attorneys' fees, although the majority view is to the contrary. See Annotation, "Conflict of Laws  Attorneys' Fees," 54 A.L.R.2d 1053.
In In re King, 34 Misc. 10, 69 N.Y.S. 399 (Sup. Ct. 1901), rev'd on other grounds, 61 App. Div. 152, 70 N.Y.S. 356 (Sup. Ct. App. Div. 1901), rev'd 168 N.Y. 53, 60 N.E. 1054 (1901), New York attorneys rendered legal services in New York pursuant to an agreement with a New Jersey testamentary trustee entered into in New York. The attorneys instituted an action in New York to recover trust assets and were successful. The assets then being located in New York, the attorneys sought to impress a New York statutory attorneys' lien on the assets and to have their compensation fixed by the New York court. The trustee urged that the attorneys' compensation should be fixed by a New Jersey court since New Jersey was the domicile of decedent and the situs of the trust. The trustee's position was rejected, the court stating:
The contract of retainer was made in this state. The property is here, and the action was brought here, and the services rendered here, and the trustee is properly before this court. * * * "A party should not run away with the fruits of a cause without satisfying the legal demands of his attorney, by whose industry, and in many instances at whose expense, those fruits are obtained." [69 N.Y.S. 401]
*330 From the foregoing cases it may be reasoned that the New York courts' choice-of-law rule with respect to attorneys' fees is to apply the law of the state where the services were rendered to determine the right to as well as the measure of compensation to be allowed. On the facts of the cases at bar, then, New York would apply New Jersey law to determine whether the carriers' subrogation claims are subject to the payment of New Jersey attorneys' fees for services rendered in this state.
A choice-of-law rule which refers us to the whole of the foreign law, including its choice-of-law principles, has been urged persuasively by Dean Griswold. See Griswold, "Renvoi Revisited," 51 Harv. L. Rev. 1165 (1938):
* * * domestic courts referred abroad should not blind themselves to foreign rules of conflict of laws. They should instead, as a matter of course, look first at the "whole law" of the other state, and undertake to dispose of the case as the foreign court would dispose of it; and if the foreign court would in its disposition apply some rule of conflict of laws the domestic court should do the same. [at 1182]
The renvoi view was rejected by the Appellate Division in In re Damato, 86 N.J. Super. 107, 115-116 (App. Div. 1965), where the court held that in applying foreign law we should look only to the internal law of the foreign jurisdiction "and not the conflict of laws of the foreign state." In reaching this conclusion the court relied primarily upon the rule as then set forth in the Restatement, Conflict of Laws, § 7(b) (1934), which likewise rejected the renvoi doctrine.
Since In re Damato was decided, the Restatement position has been significantly modified. Restatement, Conflict of Laws 2d, § 8 (1971), sets forth its present renvoi position as follows:
(1) When directed by its own choice-of-law rule to apply "the law" of another state, the forum applies the local law of the other state, except as stated in Subsections (2) and (3).
(2) When the objective of the particular choice-of-law rule is that the forum reach the same result on the very facts involved as *331 would the courts of another state, the forum will apply the choice-of-law rules of the other state, subject to considerations of practicability and feasibility.
(3) When the state of the forum has no substantial relationship to the particular issue or the parties and the courts of all interested states would concur in selecting the local law rule applicable to this issue, the forum will usually apply this rule.
More recently the Supreme Court in Heavner v. Uniroyal, Inc., 63 N.J. 130 (1973), ruled that a New Jersey court would apply the foreign state's statute of limitations to a foreign cause of action on the facts present in that case. While the court did not refer to the renvoi doctrine as such, the underlying rationale of the decision was the desire to conform the judicial result in the forum state to that which would obtain in the state in which the cause of action arose. Id., at 136-138. This is consistent with the position adopted by the Restatement, Conflict of Laws 2d, § 8(2), and suggests that we may be more flexible in accepting the more recent renvoi view expressed in the cited section of the Restatement.
Surely it would seem anomalous that a New Jersey court, applying New York law to a transaction in which New Jersey has a substantial interest, should be compelled to reach a result which our courts have deemed unfair and which is the opposite of the result a New York court would probably reach on the same facts. Hence, whether the proper choice of law rule directs us to apply the internal law of New Jersey or the law of New York, the result here is the same.
Orders may be submitted by the attorneys for the plaintiffs in accordance with R. 4:42-1(b).
NOTES
[*] In Breslin the disability benefits paid to the employee totaled $1,462. Following the institution of suit by plaintiff's client in New Jersey the action was settled for $20,000, and by agreement between the employee and her attorney, attorney's fees and costs were fixed at $5,000, or 25% of the settlement proceeds. Plaintiff seeks to reduce the defendant's subrogation claim by 25%. In Arcadipone, $1,050 was paid in benefits by the carrier. The employee's third-party claim was settled for $5,200, and the employee's attorney sought to offset $320.55 as attorney's fees, and $88.35 as expenses, against the carrier's subrogation claim.
[2] In Wilson v. Faull our Supreme Court held that a New Jersey employee, employed in New Jersey but injured while working in Pennsylvania, was barred under Pennsylvania law from suing the general contractor for its negligence, although compensation benefits were paid under the New Jersey statute and our law would not have barred the action. The resolution of the choice of law question, the court said,

* * * should not be governed by wholly fortuitous circumstances such as where the injury occurred, or where the contract of employment was executed, or where the parties resided or maintained their places of business, or any combination of these "contacts". Rather, it should be founded on broader considerations of basic compensation policy which the conflicting laws call into play, with a view toward achieving a certainty of result and effecting fairness between the parties within the framework of that policy. [at 124]