134 N.J. Super. 357 (1975)
341 A.2d 342
MICHAEL J. BRESLIN, JR. AND BRESLIN & BRESLIN, ESQS., PLAINTIFFS-RESPONDENTS,
v.
LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT-APPELLANT. JOHN M. ARCADIPONE, PLAINTIFF-RESPONDENT,
v.
WESTWOOD FORD AND JAMES A. PETERSON, DEFENDANTS-RESPONDENTS, AND CONNECTICUT GENERAL LIFE INSURANCE COMPANY, INTERVENOR-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1975.
Decided May 13, 1975.
*360 Before Judges LYNCH, ALLCORN and FURMAN.
Mr. John R. Kingsland argued for appellant Liberty Mutual Insurance Company (Mr. Frank R. Cinquina on the brief).
Mr. Frank R. Cinquina argued for intervenor-appellant Connecticut General Life Insurance Company (Messrs. Schwartz and Andolino, attorneys).
Mr. Paul A. Dykstra argued for respondents Breslin & Breslin and Michael J. Breslin, Jr. (Messrs. Breslin & Breslin, attorneys; Mr. E. Carter Corriston of counsel and on the brief).
Mr. Marc Isenberg argued for respondent Arcadipone (Mr. Philip C. Geibel, attorney; Mr. Peter Peletz, Jr. of counsel).
The opinion of the court was delivered by LYNCH, J.A.D.
The ultimate issue in these consolidated appeals is whether attorneys' fees are deductible from the lien asserted by a disability insurance carrier against a covered employee's recovery in a third-party action. As will be seen below, our resolution of that issue turns on the resolution of a conflict between New York and New Jersey law.
The trial judge, whose thoughtful opinion is reported at 125 N.J. Super. 320 (Law Div. 1973), succinctly set forth the relevant facts and legal contentions of the parties:
*361 In each instance a New Jersey resident, employed in New York, was injured in an automobile accident in New Jersey. Disability benefits were paid to the employees by their respective New York employers' insurance carriers. Actions were commenced in New Jersey by the employees against third parties for injuries received in the accidents and resulted in the recovery of amounts in excess of the disability benefits received by the employees from the carriers, plus attorneys' fees and costs (computed on the whole sum recovered). The carriers in these actions assert subrogation rights under New York law to the full extent of the benefits paid, without allowance for costs or attorneys' fees incurred by the employees in effecting a recovery.
On their part the employees assert that (1) the enforcement of the New York statutory subrogation claims should be denied in their entirety because the claims conflict with the statutory law and public policy of New Jersey, or (2) at the very least and for similar reasons, the amounts claimed by the carriers are subject to an offset for the pro rata share of costs and attorneys' fees incurred in effecting the recovery against which the right of subrogation is being claimed. [at 323-324]
The trial judge held that New York law governed the existence vel non of the subrogation rights, but that the insurers' liens were nevertheless subject, under New Jersey law, to payment of a pro rata share of the attorneys' fees and expenses incurred by the employees in the third-party actions. The insurers appeal, urging a reversal of the trial judge's holding solely with regard to attorneys' fees. Plaintiffs, apparently abandoning their contention below that no subrogation rights are cognizable, argued for an affirmance.
We reverse.
According to the New York disability statute, as interpreted by the courts of that state, the insurer is entitled to recover its full lien without deduction for attorneys' fees and expenses, provided that the employee's total third-party recovery, less attorneys' fees, exceeds the amount of disability benefits paid. McKinney's Consol. Laws, c. 67, N.Y. Workmen's Comp. Law, § 227 (1965); Cianciosi v. Merchant's Mut. Ins. Co., 61 Misc. 2d 867, 307 N.Y.S.2d 136 (Sup. Ct. 1970).
In contrast, as noted by the trial judge, New Jersey's temporary disability statute contains no specific provision *362 granting subrogation rights to an insurance carrier in the present context. N.J.S.A. 43:21-25 et seq. Consequently, the issue of an attorney's lien superimposed on the insurer's lien has not arisen in any disability insurance cases in New Jersey. In closely analogous situations, however, our law subjects the subrogation rights of carriers to payment of some share of the attorneys' fees. Under the New Jersey Workmen's Compensation Act, for example, the carrier's statutory right of subrogation is subject to payment of attorneys' fees and expenses in accordance with certain statutory maxima. N.J.S.A. 34:15-40(b) and (e); Caputo v. Best Foods, 17 N.J. 259, 267 (1955).
And, in the absence of a statute, this court has held that where an insurer's subrogation rights arise by contract, but the contract is silent as to attorneys' fees, equitable principles dictate that the insurer pay a proportional share of attorneys' fees and expenses incurred by the insured in a successful third party action. Klacik v. Kovacs, 111 N.J. Super. 307 (App. Div. 1970).
The conflict of laws between the two states is therefore clear: New Jersey favors contribution to the costs of suit by the insurer where such insurer has benefited from a third-party recovery; New York law precludes such deductions for attorneys' fees and costs from the liens of disability insurers.
This same conflict has arisen between the workmen's compensation laws of the two states. In Privetera v. Hillcrest Homes, Inc., 29 N.J. Super. 591 (Law Div. 1954), plaintiff had been injured while at work in New York. He received a workmen's compensation award from the Workmen's Compensation Board of New York. It was paid by the compensation carrier in New York. A third-party action was instituted against an alleged tortfeasor in New Jersey and was settled for $3,000. The compensation carrier claimed its entire lien, while plaintiff contended the lien was subject to deduction for expenses and attorneys' fees as provided in the New Jersey Workmen's Compensation Act, *363 N.J.S.A. 34:15-40. The court rejected plaintiff's argument, saying:
Plaintiff proceeded under the provisions of article 2, section 29 of the Workmen's Compensation Law of New York, which authorized him to bring the third-party action, and he is, accordingly, bound by all of the provisions of that law  he cannot take advantage of the portion he likes and disregard those portions of which he disapproves.
My conclusion, therefore, is that the New York statute is controlling in the present case, and the New Amsterdam Casualty Company is entitled to receive the draft of $1,123.40 without deduction. The petition to impress an attorney's lien upon the fund must, necessarily, be dismissed. [at 593]
Thus, even where there was a New Jersey statute providing for payment of attorneys' fees and costs, New York law to the contrary prevailed. As we have noted above, there is no such comparable New Jersey statute applicable to disability benefits as distinguished from workmen's compensation benefits.
Privetera was cited with approval in Liberty Mutual Ins. Co. v. Borsari Tank Corp., 248 F.2d 277 (2 Cir.1957). In that case Liberty Mutual had paid compensation under Missouri law to the widows of three employees of a Missouri employer who had been killed while working on a New Jersey construction job. Third-party actions, brought in New Jersey by their estates, were settled for a total sum of $82,500. The issue arose as to whether, at the time of the settlement, Liberty was entitled to reimbursement of its full lien, or whether such recovery was subject to a reduction in the amount of a pro rata share of the attorneys' fees in the third party New Jersey actions. The court said:
Although Liberty Mutual and Borsari filed their statutory notice in the third party actions instituted in the New Jersey State Court, pursuant to New Jersey law, their right to recover on their lien, the amount of their recovery and the conditions attached thereto, are governed by the law of the State whose Compensation Act was invoked by the claimants in obtaining their compensation awards. In this case it would be the law of Missouri. [at 282; emphasis supplied]
*364 Wilson v. Faull, 27 N.J. 105 (1958), involved the issue as to whether New Jersey or Pennsylvania law was applicable to the right of an injured employee of a subcontractor to maintain a common law action against a general contractor, the law of the two states differing in that regard. The court applied Pennsylvania law and said:
However, where the injured employee seeks to maintain a common law tort action against his employer in one of two or more states having a legitimate interest in the work-injury, the forum has almost invariably applied the law of the state in which the employer has provided compensation insurance and whose law granted such employer immunity from common law negligence actions by the employee, and dismissed the suit (citations omitted), * * * This choice of law has been made by the state of the forum, whether it was the state of the injury (citations omitted), * * * or the state of the contract (citations omitted), * * * or the state of employment relation (citations omitted) * * *. [at 117-118; emphasis supplied]
* * * Fundamental compensation policy dictates that where an employer is required to provide compensation benefits by the law of the state having a legitimate interest in a work-injury, under which the injured employee could claim a compensation remedy against the employer, the state of the forum should recognize the correlative immunity conferred upon such an employer by the law of the foreign state. [at 120; emphasis supplied]
All of the reasoning of Privetera, Liberty Mutual Ins. Co. v. Borsari Tank Corp., and Wilson v. Faull, which we consider sound, applies here. Indisputably, the disability policies under which the companies paid the benefits were issued in New York to New York employers. It is that state's law which creates the carriers' right of subrogation, regulates the insurance premiums payable and specifies the amount of recovery of the lien. While we recognize the trend away from former "mechanical" formulae in deciding choice-of-law questions (compare Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 492 (1961), with Buzzone v. Hartford Acc. & Indem. Co., 23 N.J. 447, 452 (1957)), we conclude that, whether we apply a traditional or a more modern choice-of-law test, New York law should govern *365 the deductibility of attorneys' fees from the carriers' liens under the circumstances here.
As we have noted above, the trial judge held that New York's disability benefits law must govern the existence of the right of subrogation. In so holding the court stated:
The place of employment here was New York and the benefits were paid to the injured employees by reason of their New York employment and pursuant to the statutory scheme of that state. While choice of law in this situation is not controlled by the application of mechanistic formulae as such, it is evident that fundamental fairness as well as the need for certainty of result commits our courts to look to the laws of the state pursuant to which the benefits were paid to determine questions affecting the essential rights of the employers, co-employees, as well as insurance carriers. See Stacy v. Greenberg, 9 N.J. 390; Privetera v. Hillcrest Homes, Inc., supra; but see, Wilson v. Faull, 27 N.J. 105 (1958). [at 325 of 125 N.J. Super.]
The court went on to say, however, that "it does not automatically follow that the choice-of-law on the first issue compels us to choose New York law in determining the status of the asserted attorneys' liens." Though we agree with this general proposition, we fail to see why the "contacts" recited by the court in accepting application of New York law as to the "existence" of the right of subrogation do not equally postulate that state's law as governing the extent of that right.
Nor do we agree, as the trial judge said, that an attorney's lien has such "priority" under New Jersey law as to warrant engravement of a limitation on the subrogation right created under New York auspices. Not every legal principle established in a state rises to the dignity of "public policy." A mere difference between our law and that of another jurisdiction does not compel the conclusion that the foreign law is offensive to our public policy. Caribe Hilton Hotel v. Toland, 63 N.J. 301, 308 (1973); Zotta v. Otis Elevator Co., 64 N.J. Super. 344, 349 (App. Div. 1960). Rather, "public policy" in conflicts of law doctrine has been said to be "some fundamental principle of justice, *366 some prevalent conception of good morals, some deep-rooted tradition of the common weal." Loucks v. Standard Oil Co., 224 N.Y. 99, 111, 120 N.E. 198, 202 (Ct. App. 1918); see Buzzone v. Hartford Acc. & Ind. Co., supra, 23 N.J. at 458-459. We accept the proposition that it is the law of New Jersey that an attorney shall be paid for the services he renders. We do not conceive that such principle is such a deep-rooted fundamental principle of justice as to be considered "public policy" in the sense that that concept is relevant here. Moreover, the New Jersey policy of compensating attorneys has not been violated here. The attorneys in the instant cases are not, by our decision, denied compensation for services rendered. Our decision concerns only the degree to which the cost of such services should be shared between the carriers and the employee-plaintiffs.
The case of Klacik v. Kovacs, supra, 111 N.J. Super. 307, does not in our view support the application of New Jersey law here. Again, as the trial judge concedes, the subrogation right there arose "as a matter of private insurance contract and not by virtue of the law of a sister state." 125 N.J. Super. at 327. We consider the distinction to be crucial. The court in that case was not confronted with any choice-of-law issues, but only with a question of local law. In the instant case, however, the issue is not what the local law should be, but rather whether that law, or a conflicting foreign law, should apply. We have concluded that New York law should apply.
Nor do we agree, as plaintiffs argue, that New Jersey's interest in settlement of litigation warrants rejection of New York's law that the insurers' liens are not subject to deductions for attorneys' fees and costs. We are not persuaded that imposition of such fees and costs will, in the words of the trial court, "remove an impediment to the settlement of disputes in our courts." 125 N.J. Super. at 328. We do agree that the cooperation of the subrogee-insurer is frequently a substantial factor in effecting settlements. But *367 that "cooperation" is exemplified by the willingness of the insurer to reduce the amount of its lien. Therefore it may be argued that reduction of the lien by the amount of the attorneys' fees and costs will give the insurer less leeway to reduce its lien. In that instance the insurer would have less monies available for reduction of its lien and less motivation for cooperation in settlement negotiations.
While the trial court would consider that the renvoi doctrine, rejected by this court in In re Damato, 86 N.J. Super. 107, 115-116 (App. Div. 1965), has been reborn by reason of the revision of the Restatement, Conflict of Laws 2d, § 8 (1971), we disagree. We recognize the revision made in the Restatement of 1971, but we do not consider that it dilutes the soundness of the reasoning of In re Damato in rejecting the doctrine because of its inherent capacity for confusion and unending "circular process." We consider In re Damato still to be the law of this State.
Lastly, respondents argue that under the Full Faith and Credit Clause the giving of effect to one part of a foreign statute (in this case the "existence" of the statutory lien) does not preclude rejection of other parts (here nondeductibility for fees and costs). We accept that proposition. But it does not follow that such other parts should not be accepted where, as here, the interests of the foreign state predominate. Here we hold that New York's interests are such that choice-of-law principles dictate recognition of all aspects of the insurers' liens  the nature, extent of recovery and the condition thereof, and, more particularly, their recovery without deduction for attorneys' fees and costs in this context.
For the foregoing reasons the judgments below, insofar as they ordered that the companies' liens were subject to deductions for attorneys' fees for services rendered in the New Jersey third-party actions, are reversed. The cases are remanded to the trial court for proceedings in accordance with the views herein expressed.