149 N.J. Super. 591 (1977)
374 A.2d 489
FRANK LEWANDOWSKI, PLAINTIFF,
v.
NATIONAL GRANGE MUTUAL INSURANCE CO., DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 22, 1977.
*594 Mr. Stanley W. Greenfield for plaintiff (Messrs. Stanley W. Greenfield and Douglas C. Greenfield, attorneys; Mr. Stanley W. Greenfield on the brief).
Mr. Thomas E. Lenney for defendant (Mr. Robert F. Colquhoun, attorney; Mr. Thomas E. Lenney on the brief).
*595 WEISS, J.D.C., Temporarily Assigned.
Plaintiff seeks to have defendant's policy of insurance cover a judgment previously entered against an operator of a motor vehicle which was insured by defendant. The facts which bring this suit before the court are as follows:
In early June 1971 Ricardo Osborne, a resident of Brooklyn, New York, brought his 1967 Plymouth to a service station in Staten Island, New York, for repair. When Osborne learned that James Sarjeant, an employee of the service station, had been seen driving the car in Staten Island, he phoned Sarjeant telling him, "My car is in the service station to be fixed and not to be driven." Subsequent to this conversation, and unknown to Osborne, Sarjeant drove the car to New Jersey contrary to the above instructions.
A police report which has been stipulated as part of the record reveals that Sarjeant was involved in an accident at about 4:22 A.M. in Clark, New Jersey, on Sunday, July 4, 1971, with plaintiff Frank Lewandowski, a resident of Clark. The report indicates that the car driven by Sarjeant,
* * * was observed at the Winfield Traffic Circle heading West on Stiles St. at a high rate of speed, where upon it was chased by a Linden Patrol car. It later headed North on Valley Road where a Rahway Patrol car joined the chase. Upon approaching the curve near Union County Parkway [Sarjeant] lost control of vehicle skidding sideways into the Southbound lane striking [the Lewandowski vehicle] which was heading South on Valley Rd.
Lewandowski brought actions against the owner Osborne, and the driver Sarjeant. The suit against Osborne was dismissed upon defendant's motion for summary judgment on the grounds that the driver was not operating the vehicle as the agent, servant or employee of the owner at the time of the accident in question. The suit against Sarjeant resulted in a $15,980 judgment for plaintiff. This action was commenced by Lewandowski, seeking to have Sarjeant *596 declared an insured under the liability policy issued by defendant National Grange Mutual Insurance Co. covering Osborne's car.
Whether Sarjeant is an insured under the policy depends upon the effect given the omnibus clause which states in pertinent part,
III DEFINITION OF INSURED  (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes * * * any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or * * * spouse or with the permission of either. The insurance with respect to any person or organization other than the named insured or such spouse does not apply:
(1) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof, * * *
Specifically, two questions arise. (1) Is the garageman's exclusion contained in the the above subsection enforceable and, if so, does it preclude coverage here, and (2) was Sarjeant's operation of the car with "permission" as the term is used in the above section?

I
(1) In Selected Risks Ins. Co. v. Zullo, 48 N.J. 362 (1966), it was held that any policy submitted to obtain the advantages of registering an insured motor vehicle must have the broad form omnibus coverage set forth in N.J.S.A. 39:6-46(a), extending coverage in accordance with Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960). Purported omnibus restrictions would be automatically amended to conform to the statutory standard by N.J.S.A. 39:6-46(a). In Unsatisfied Claim & Judgment Fund Bd. v. Clifton, 117 N.J. Super. 5 (1971), the Appellate Division, following Zullo, supra, held that to the extent a clause excluding *597 garagemen from coverage has the effect of limiting the omnibus coverage required by N.J.S.A. 39:6-46, the clause is invalid.
Although the Motor Vehicle Responsibility Law clearly sets forth the public policy of the State, the Zullo court (48 N.J. at 374) explicitly avoided the question of whether its holding could be based upon public policy apart from the specific statutory requirements. The present case involves a policy written in New York covering a New York car. Subsequent analysis will show that the question as to whether the Clifton result could be based entirely upon the strong public policy of New Jersey need not be reached.
(2) It is well settled that New Jersey follows the "initial permission" rule in determining whether the insurer is liable for damage caused by a permissive user. Matits v. Nationwide Mutual Ins. Co., supra; Odolecki v. Hartford Acc. & Indem. Co., 55 N.J. 542 (1970). Thus, once the driver is given permission to use the car initially, any use short of theft or the like, even though beyond the scope of permission or contrary to specific instructions, is a permissive use. See Odolecki v. Hartford Acc. & Indem. Co., supra at 496-497.
When Osborne gave a set of keys to the service station attendant, permission to drive was impliedly granted. In Butler v. Bonner & Barnewall, Inc., 56 N.J. 567 (1970), the court stated,
We concluded [in Odolecki] that once an owner voluntarily hands over the keys to his car, the extent of permission he actually granted, either with regard to scope of use or limitation of operator, is irrelevant. [at 574]
Thus, once Osborne impliedly granted permission to operate his car, the later restrictions on the scope of permitted use contained in his telephone conversation with Sarjeant were of no effect in limiting the liability of National Grange.
State Farm Mut. Auto Ins. Co. v. Travelers Ins. Co., 57 N.J. 174 (1970), involved a question of scope of permission *598 in a similar factual setting. There a car was left for repair with an automobile dealer and was subsequently involved in an accident while being driven by an employee of the dealer. The court stated:
Even if we assume that * * * [the driver] was not road-testing the car at the time of the accident, but was using it for his personal transportation, and even if we make the further assumption that the need to roadtest the car had terminated with the completion of repairs, the most that can be said is that * * * [the driver] deviated from the initial permission in terms of both time and purpose. Yet as we have already stated, such deviations are irrelevant. [at 179]
National Grange has made no suggestion that this case involves "theft or the like." There is no evidence that Sarjeant was guilty of criminal conduct in obtaining the car or intended to permanently deprive Osborne of his car. Thus, if New Jersey law were to be applied, the finding that there was permissive use is inescapable.

II
Counsel submitted this case to the court on stipulated facts, arguing New Jersey law. In light of the preceding analysis and the finding of this court that Sarjeant's use of Osborne's car was unrelated to the operation of the service station or the repair of the car, it is clear that were New Jersey law to be applied, National Grange would be liable for the judgment recovered against the driver of the insured automobile. Buzzone v. Hartford Acc. & Indem. Co., 23 N.J. 447 (1957), however, requires that the law of New York be used in determining the obligations imposed by a contract of insurance executed in that state. Buzzone involved a New Jersey accident in which New Jersey victims were injured by a New York driver. The question presented to the court was whether coverage would be imposed when the insured failed to comply with the New York Financial Responsibility Law by certifying the policy. New Jersey law required no *599 such certification and would, therefore, have deprived the insurer the defenses based upon the fraud of the driver. The court, distinguishing the rights and obligations arising out of the contract from those stemming from the tortious conduct, stated that the law of the place of the contract would generally control in the former inquiry even though the law of the place of the accident would control in the latter.
We think it too settled to be questioned that the rights and liabilities of the insurer under the policy and the statutory impact thereon are to be determined by the law of the state where the contract was made. "The question of what is the obligation imposed by a contract of insurance, what are its terms and provisions, has usually rightly been held to be governed by the law of the place of contracting." 2 Beale on Conflict of Laws, sec. 346.4, p. 1210 (1935). [at 452]
See also, Maryland Cas. Co. v. Jacek, 156 F. Supp. 43, 44 (D.N.J. 1957).
The Buzzone court emphasized that the foreign driver would not be given any immunity not allowed a resident in his position. As in Buzzone, the question here is not whether the nonresident driver is liable for the damages he negligently causes on our highways. He is. "The question is whether that driver's insurer, who has a valid defense under the law applicable to the insurance contract, may assert it in our courts." Id., 23 N.J. at 457.
Although it had been urged that New Jersey had a strong interest in guarding the welfare of its citizens by applying New Jersey law, Buzzone v. Hartford Acc. & Indem. Co., 41 N.J. Super. 511, 524 (App. Div. 1956) (Freund, J.A.D., dissenting), our Supreme Court stated that such protection would have to come from the Legislature. 23 N.J. at 457 (1957). The court went on to emphasize the importance of "the quality of consistency" in conflicts principles, referred to Beale's 1935 treatise. Thus, "the more fundamental policy should be that rights lawfully vested should be recognized everywhere." Id., 23 N.J. 447, 458, citing Loucks v. Standard Oil Co. of N.Y., 224 N.Y. 99, 120 N.E. 198 (Ct. App. 1918).
*600 Judge Freund's dissent in Buzzone, 41 N.J. Super. at 524 (1956), is more convincing today than it was two decades ago. During the intervening period new developments, such as compulsory insurance, uninsured motorist coverage and no fault insurance, have reflected our Legislature's growing concern with protecting the innocent victims of automobile accidents. See also, Concord Ins. Co. v. Miles, 118 N.J. Super. 551, 555 (App. Div. 1972).
More recent theories of conflict of laws have criticized the vested rights approach of the 1934 Restatement and have suggested the impropriety of applying the law of a sister state when that state has no interest in the matter.[1] In the present case this court must adjudicate the rights of a corporation, whose home office is in New Hampshire, and a New Jersey motorist. While New York has no particular interest in the application of its law, our Supreme Court has repeatedly enunciated the policy reasons for adopting the "initial permission" rule. The rejected permission rules render coverage uncertain, foster litigation and frustrate the legislative goal of ensuring compensation for wrongfully injured New Jersey motorists. Matits v. Nationwide Mut. Ins. Co., supra, 33 N.J. at 495, 496; Small v. Schuncke, 42 N.J. 407, 412; Odolecki v. Hartford Acc. & Indem. Co., supra at 546.
Given these important New Jersey concerns and no corresponding pressing interest of New York, it would make sense to apply New Jersey law  that is, to construe the contract in accordance with the "initial permission" rule. While parties to a contract are entitled to the protection of their justified expectations, this should be no barrier here. The insurer of a moving vehicle is on notice that the insured may venture into neighboring states and can take this into *601 account when setting rates. Yet the mandate of Buzzone v. Hartford Acc. & Indem. Co., supra, is clear. Keystone Ins. Co. v. Bowman, 138 N.J. Super. 544, 549 (App. Div. 1976); Cirelli v. Ohio Cas. Ins. Co., 133 N.J. Super. 492, 497 (Law Div. 1975). While a trial court need not necessarily agree with our appellate tribunals, it may not disregard them. This court will, therefore, apply the law of the place of the contract in determining the statutory impact upon the omnibus clause. It is hoped, however, that the appellate courts will take this opportunity to re-examine the Buzzone application of the 1934 Restatement as it relates to the facts of the present case.

III
It cannot seriously be contended that this court is not empowered to take judicial notice of the laws of New York. See Evid. R. 9(2)(a). In Public Serv. Coord. Trans. v. Marlo Trucking Co., 108 N.J. Super. 232 (1970), the Appellate Division construed an insurance policy executed and delivered in New York according to the laws of that state, notwithstanding the plaintiff's failure to plead New York law. "Under Evidence Rule 9(2) the court is authorized to take judicial notice of New York law even without request by a party." Id., at 235-236. Pursuant to Evid. R. 10, counsel were permitted an opportunity to brief and argue the issue of the applicability of New York law.

IV
When a New Jersey court is presented with "the generally frustrating task of seeking to interpret and apply foreign law rather than * * * own," Interstate Wrecking Co. v. Palisades Interstate Park Comm'n, 57 N.J. 342, 352 (1971), it looks to the internal law of the reference state, applying New Jersey conflicts law. In short, our State rejects the renvoi. In re Damato, 86 N.J. Super. 107 (App. *602 Div. 1965); Breslin v. Liberty Mut. Ins. Co., 134 N.J. Super. 357 (App. Div. 1975), aff'd 69 N.J. 435 (1976).

V
(1) Under New York law the garageman's exclusion contained in the omnibus clause of the National Grange policy is a valid limitation of the liability of the insurer. The Codes, Rules & Regulations of the State of New York provides:
As respects any person or organization other than the named insured or such spouse the policy need not apply: (i) to any person or organization, or to any agent or employee thereof, employed or otherwise engaged in operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the maintenance or use of a motor vehicle in connection therewith. [11 N.Y.C.R.R. 60.1 (c) (i)]
Such an exclusion, however, will preclude coverage only when the accident occurred in the course of the operation of the service station and not where the use is unrelated to the performance of the contract between the owner and the service station. Nationwide Mut. Ins. Co. v. Exchange Mut. Ins. Co., 49 Misc. 2d 707, 268 N.Y.S.2d 495 (Sup. Ct. 1966); Home Ins. Co. v. Hartford Acc. & Indem. Co., 80 Misc.2d 100, 362 N.Y.S.2d 128 (Sup. Ct. 1974).
In the present case National Grange offered no proof that Sarjeant's operation in a neighboring state on Sunday, July 4, at about four o'clock in the morning, was related to the performance of the contract to repair the car or was in furtherance of the operation of the service station. The court, therefore, finds that on the facts of this case the exclusion does not preclude coverage.
(2) The New York Vehicle and Traffic Law, § 388, provides in part:
Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or *603 operating the same with the permission, express or implied, of such owner. * * *
The court cannot accept plaintiff's conclusion that this abrogation of the common law rule leads to a standard even more stringent than that of New Jersey. First,
This section [388] mandates coverage for the owner of a vehicle for his vicarious liability created by the section. It does not, however, require that every person using or operating such vehicle with permission of the owner be covered under such policy as an additional insured * * * [Hiscock v. Kuinlan, 62 Misc. 2d 842, 310 N.Y.S.2d 331, 334 (Sup. Ct. 1970); citations omitted]
Second, New York courts define "permission" in § 388 and in the contract underlying this action differently than do the New Jersey courts.[2]
In Houlihan v. Selengut, 175 Misc. 854, 25 N.Y.S.2d 371 (Sup. Ct. 1941), rev'd on other grounds, 263 App. Div. 811, 31 N.Y.S.2d 560 (App. Div. 1941), defendant owner left his car and keys with a parking garage. The garageman drove the car and injured plaintiff. The court stated that the precursor to § 388 (the Vehicle and Traffic Law, § 59) made the owner's permission to use the car the basis for his liability. The owner
"* * * was assumed to have the right to grant or withhold such permission. If it was being driven without his permission, or contrary to his express orders, no liability attached to him. * * * It nowhere appears in the statute that the Legislature intended that the vicarious liability created by its enactment should be visited upon one who could not prevent or control the use or operation of his car by *604 withholding permission." Leppard v. O'Brien, 225 App. Div. 162, 164, 165, 232 N.Y.S. 454, 456 (App. Div. 1929). [Id. at 374]
Under the present Vehicle and Traffic Law, § 388, proof of ownership creates a rebuttable presumption that the driver operated the vehicle with the permission of the owner. But this presumption disappears when there is substantiated evidence to the contrary. When the owner restricts the driver's use of the vehicle and the instructions are ignored, the vehicle is being driven without the permission of the owner. Burmaster v. State, 7 N.Y.2d 65, 195 N.Y.S.2d 385, 387, 163 N.E.2d 742, 743 (Ct. App. 1959); De Lancey v. Nationwide Ins. Co., 26 A.D. 2d 631, 272 N.Y.S.2d 468, 469 (App. Div. 1966).
Malone v. Liss, Inc., Service Station, 5 Misc.2d 1002, 162 N.Y.S.2d 637 (City Ct. 1957), involved facts similar to those in the present case. Defendant owner left his car in a service station to be repaired. An employee of the service station injured the plaintiff while driving the defendant's car. The court concluded that the owner had reason to believe that the repairs would require road testing and the owner, therefore, could be charged with implied consent to such use, but only at a reasonable time and place. The court emphasized (at 639-640) that such consent would clearly not be implied from a personal use by the service station employee.
The earlier finding of the court that the car was not being used pursuant to the operation of the service station resolves the present inquiry. The owner's phone call limited the implied permission to operation in furtherance of the repair of the car. Sarjeant's use of the car was personal and therefore contrary to restrictions placed upon the scope of permission. As this court is bound to follow the law of New York in determining the effect to be given the language of the policy, it cannot escape the finding that Sarjeant was not an insured under the omnibus clause. National Grange, therefore, is not liable for the judgment against Sarjeant.
NOTES
[1] Where the issue involves the determination of tort liability, our courts have been less reluctant to abandon the choice of law rules applied during the fifties and early sixties. See, e.g., Mellk v. Sarahson, 49 N.J. 226 (1967); Wuerffel v. Westinghouse Corp., 148 N.J. Super. 327 (Law Div. 1977), using the interest analysis approach in negligence actions.
[2] As the § 388 abrogation of the common law rule extends the liability of the owner, the meaning of "permission" has not been defined in the New York cases in the present setting. In New York the question arises not in the context of determining whether the owner's insurer is liable, but whether the owner himself is liable. Nevertheless, the New Jersey conflicts rule requires this New York contract of insurance to be construed according to the law of New York. Buzzone v. Hartford Acc. & Indem. Co., supra, 23 N.J. at 452; Maryland Cas. Co. v. Jacek, supra at 44. The inquiry must, therefore, be concerned with the New York permission rule.